STATE OF MISSOURI AT THE RELATION OF THE BURNES NATIONAL BANK OF ST. JOSEPH *v.* DUNCAN, JUDGE OF THE PROBATE COURT OF BUCHANAN COUNTY, MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 762.   Argued April 11, 1924.—Decided April 28, 1924.

1. The Act of September 26, 1918, c. 177, § 2, 40 Stat. 967, amending § 11(k) of the Federal Reserve Act, authorizes a national bank having the permit of the Federal Reserve Board, to act as executor, if trust companies competing with it have that power by the law of the State in which the bank is located, whether the exercise of such power by the national bank is contrary to the state law or not.   P. 23.
2. The power of Congress to grant such accessory functions to national banks, to sustain them in the competition of the banking business, cannot be controlled by state laws.   *First National Bank* v. *Fellows,* 244 U. S. 416.   P. 24.
3. The authority given by the act is independent of regulations adopted by the State to secure the trust funds in the hands of its trust companies.   *Id.*
302 Mo. 130, reversed.

ERROR to a judgment of the Supreme Court of Missouri which denied the bank's application for a writ of mandamus to compel a probate court to issue to it letters testamentary, it having been appointed executor by a will.

*Mr. Justin D. Bowersock,* with whom *Mr. John C. Landis, Jr., Mr. William T. Jones, Mr. Henry L. McCune, Mr. Armwell L. Cooper, Mr. I. P. Ryland* and *Mr. Samuel McReynolds* were on the brief, for plaintiff in error.

I. When Congress enters any field over which it is given jurisdiction by the Constitution, it appropriates that field to the fullest extent necessary to insure the complete exercise of its sovereignty. Its enactments are the supreme law of the land, paramount to any state law or authority. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Northern Pac. Ry. Co.* v. *North Dakota,* 250 U. S. 135; *Smith* v. *Alabama,* 124 U. S. 465; *Mondou* v. *N. Y., N. H. & H. R. R. Co.,* 223 U. S. 1.

II. Congress has jurisdiction to establish and regulate national banks, and its action in that regard, if constitutional, is entirely independent of and superior to all state laws. *McCulloch* v. *Maryland, supra; Osborn* v. *Bank,* 9 Wheat. 738; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275; *Farmers' & Mechanics' Bank* v. *Dearing,* 91 U. S. 29; *Easton* v. *Iowa,* 188 U. S. 220; *Van Reed* v. *People's National Bank,* 198 U. S. 554.

III. The act of Congress granting trust powers to national banks is constitutional and such power cannot, therefore, be nullified, impeded, burdened or controlled by state law or authority, except as permitted by Congress. *First National Bank* v. *Fellows,* 244 U. S. 416.

IV. Such powers have been granted to relator in so far as they are not in contravention of state or local law, and the power to act as executor (included therein) is not in contravention of the laws of Missouri.

1. This is a federal and not a state question. Congress has here provided for the exercise of certain functions "when not in contravention of state or local law" and has laid down certain conditions under which it "shall not be deemed to be in contravention of state or local law within the meaning of this Act." Manifestly, the funda-

mental question is what intention Congress expressed by the language of the act. The law of the State enters into consideration only incidentally as affecting that expressed intention. It might well be that an act would, as a mere question of state law, contravene such law, and yet not do so within the meaning of the act of Congress.

If this were not true, a State might enact a law expressly forbidding national banks to act as executor, and the State Supreme Court might hold that the exercise of such power was therefore in contravention of state law. See *Andrews* v. *Hovey,* 124 U. S. 694; *The J. E. Rumbell,* 148 U. S. 1; *Scott* v. *McNeal,* 154 U. S. 34.

2. Even aside from the provisions of the amendment of September 26, 1918, there is no law in Missouri inconsistent with the appointment of a national bank as executor.

3. The question is, however, forclosed in Missouri by the amendment to the Federal Reserve Act, enacted September 26, 1918. *In re Mollineaux,* 179 N. Y. S. 90; *Estate of Stanchfield,* 171 Wis. 553; *Hamilton* v. *State,* 94 Conn. 648; *Turner's Estate,* 277 Pa. St. 110; *Fidelity National Bank & Trust Co.* v. *Enright,* 264 Fed. 236; *Fellows* v. *First National Bank,* 192 Mich. 640.

4. The amendment of 1918 is more than a mere definition of terms. In effect it is a legislative declaration and clarification of the law as laid down in the original enactment.

5. The question for determination is reduced to this: Do the laws of Missouri authorize or permit the exercise of trust powers, including the power to act as executor, by state banks, trust companies or other corporations which compete with national banks? This question is answered in the affirmative by the statutes of the State.

V. Cases distinguished: *People* v. *Brady,* 271 Ill. 100; cf. *People* v. *Russel,* 283 Ill. 520; *Appeal of Woodbury,* 78 N. H. 50; *Aquidneck National Bank* v. *Jennings,* 44 R. I. 435.

*Mr. Solicitor General Beck,* with whom *Mr. Walter Wyatt* and *Mr. Edgar W. Freeman* were on the brief, for the United States, as *amicus curiae,* by special leave of Court.

By the Act of September 26, 1918, Congress declares that national banks may exercise trust powers if such exercise is not in contravention of state laws; but it goes further and provides in unmistakable language that the exercise of trust powers by national banks shall not be deemed in contravention of the laws of a State within the meaning of the act if the laws of such State permit the exercise of those powers by state corporations which compete with national banks.

Under this act, if state corporations which compete with national banks may act in a fiduciary capacity, national banks may do so.

Neither a state legislature nor the state courts may place national banks in a class by themselves and decide whether or not they shall be permitted to act in a fiduciary capacity.

So interpreted, the act of Congress is constitutional. The exercise of trust powers is reasonably incidental to the operation of a national bank. *First National Bank* v. *Fellows,* 244 U. S. 416. When a State creates competitors of national banks it thereby engenders in Congress an implied authority to protect those banks by empowering them to meet their competitors on an equal footing. Under such circumstances, Congress may constitutionally authorize national banks to act in a fiduciary capacity. *Fellows Case, supra.* An attempt by a State to define the duties of national banks or to control the conduct of their affairs is absolutely void wherever such attempted exercise of authority expressly conflicts with the laws of the United States and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal Government to discharge

the duties for which they were created. *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 283; *McClellan* v. *Chipman,* 164 U. S. 347; *First National Bank* v. *Missouri,* 263 U. S. 640.

Missouri trust companies are authorized to exercise wide trust powers and engage in the banking activities which are the usual and characteristic functions of commercial banks, such as national banks. Section 11799 of the Banking Laws of Missouri (Revision of 1919); *Denny* v. *Jefferson County,* 272 Mo. 436. Thus they inevitably come into competition with the national banks in that State.

*Mr. Morton Jourdan* and *Mr. Charles H. Mayer,* for defendant in error, submitted.

That an act of Congress, within the field covered by its constitutional power, is the supreme law of the land; that Congress has complete constitutional power to establish and regulate national banks, and that the act of Congress granting trust powers to national banks is constitutional and cannot be nullified or controlled by the States, are three propositions contended for by the plaintiff in error, which are conceded by the defendant in error.

The Missouri Supreme Court committed no error in holding that the exercise of the office of executor, here sought to be exercised, would be in contravention of the state law.

The power to regulate descents and distributions and the devolution of estates is exclusively within the State. *Overby* v. *Gordon,* 177 U. S. 214; *Pennoyer* v. *Neff,* 95 U. S. 714.

Executors and administrators are instruments through which the States regulate and control descents, distributions and the devolution of estates, and therefore, it seems to us, the State must have the right to determine what instruments may be used, without contravening the state law. *First National Bank* v. *Fellows,* 244 U. S. 416.

The amendment to § 11(k) of the Federal Reserve Act was not intended to and did not deprive the States of this right.

Inasmuch as the act, before and after amendment, conferred no power directly upon national banks, but conferred a mere administrative power upon the Federal Reserve Board, it would seem that the second paragraph of the amendment was intended as an interpretation of the act for the benefit of the Federal Reserve Board, and was not intended to render meaningless and to destroy one of the principal provisions of the original act, which provision was retained in the act as amended.

Unless the clause "when not in contravention of state law" is to be held to be meaningless, then the Missouri Supreme Court had the duty and the right of determining whether or not the appointment of a national bank as executor in Missouri was in contravention of state law; and, therefore, the Court committed no error in declining to issue its mandamus. *First National Bank* v. *Fellows,* 244 U. S. 416; *People* v. *Brady,* 271 Ill. 100; *Appeal of Woodbury,* 78 N. H. 50; *First National Bank* v. *Missouri,* 263 U. S. 640; *Aquidneck National Bank* v. *Jennings,* 44 R. I. 435.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The relator, the Burnes National Bank of St. Joseph, was appointed executor by a citizen of Missouri who died on November 27, 1922, leaving a will. The Bank applied to the proper Probate Court for letters testamentary, but was denied appointment on the ground that by the laws of Missouri national banks were not authorized to act as executors. Thereupon it applied to the Supreme Court of the State for a writ of mandamus to the Judge of the Probate Court and an alternative writ was issued. The respondent demurred, the demurrer was sustained and the

peremptory writ was denied.   302 Mo. 130.   A writ of error was allowed by the Chief Justice of the State Court. The Bank claims the capacity to fill the office under the statutes of the United States.

By the Act of September 26, 1918, c. 177, § 2, 40 Stat. 967, 968, amending § 11(k) of the Federal Reserve Act, the Federal Reserve Board was empowered " To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator . . . or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located."   If the section stopped there the decision of the State Court might be final, but it adds the following paragraph, " Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this Act."   This says in a roundabout and polite but unmistakable way that whatever may be the state law, national banks having the permit of the Federal Reserve Board may act as executors if trust companies competing with them have that power.   The relator has the permit, competing trust companies can act as executors in Missouri, the importance of the power to the sustaining of competition in the banking business is so well known and has been explained so fully heretofore that it does not need to be emphasized, and thus the naked question presented is whether Congress had the power to do what it tried to do.

The question is pretty nearly answered by the decision and fully answered by the reasoning in *First National*

*Bank of Bay City* v. *Fellows,* 244 U. S. 416. That case was decided before the amendment to the Federal Reserve Act that we have quoted and came here on the single issue of the power of Congress when the state law was not contravened. It was held that the power " was to be tested by the right to create the bank and the authority to attach to it that which was relevant in the judgment of Congress to make the business of the bank successful." 244 U. S. 420. The power was asserted and it was added that " this excluded the power of the State in such case, although it might possess in a general sense authority to regulate such business, to use that authority to prohibit such business from being united by Congress with the banking function." 244 U. S. 425. Now that Congress has expressed its paramount will this language is more apposite than ever. The States cannot use their most characteristic powers to reach unconstitutional results. *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1. *Pullman Co.* v. *Kansas,* 216 U. S. 56. *Western Union Telegraph Co.* v. *Foster,* 247 U. S. 105, 114. There is nothing over which a State has more exclusive authority than the jurisdiction of its courts, but it cannot escape its constitutional obligations by the device of denying jurisdiction to courts otherwise competent. *Kenney* v. *Supreme Lodge of the World,* 252 U. S. 411, 415. So here—the State cannot lay hold of its general control of administration to deprive national banks of their power to compete that Congress is authorized to sustain.

The fact that Missouri has regulations to secure the safety of trust funds in the hands of its trust companies does not affect the case. The power given by the act of Congress purports to be general and independent of that circumstance and the act provides its own safeguards. The authority of Congress is equally independent, as otherwise the State could make it nugatory. Since the decision in *First National Bank of Bay City* v. *Fellows,*

244 U. S. 416, it generally has been recognized that the law now is as the relator contends. *Turner's Estate,* 277 Pa. St. 110, 116. *Estate of Stanchfield,* 171 Wis. 553. *Hamilton* v. *State,* 94 Conn. 648. *People* v. *Russel,* 283 Ill. 520, 524. *In re Mollineaux,* 179 N. Y. S. 90. *Fidelity National Bank & Trust Co.* v. *Enright,* 264 Fed. 236.

*Judgment reversed.*

MR. JUSTICE SUTHERLAND, dissenting.

The real question here, as I understand it, is not whether Congress may safeguard national banks against ordinary state legislation of a discriminative character; but whether Congress may intrude upon and prohibit the exercise of the *governmental powers* of a State to the extent that such exercise discriminates against such banks in favor of competing state corporations. The authority of the *Fellows Case,* I think, is pressed too far. The statute there under review simply made national banks competent to act as executors, etc., "when not in contravention of State or local law." The statute did not attempt to override the will of the State in that respect, but expressly recognized its control and authority. The State Supreme Court conceded that the powers thus conditionally conferred by the federal statute, in fact, would not be in contravention of the state law, but held that Congress was without constitutional authority, because the functions sought to be given to such banks were subjects of state regulation. That view of the matter was rejected; but, putting aside some expressions not necessary to the decision, I do not think the case can be regarded as authority for the conclusion apparently now reached: that Congress may so limit the power of a State, against its expressly declared will to the contrary, that it may confer the right to act as executors and administrators upon state corporations which compete with national banks, only upon condition that the same right be con-

ferred upon the latter.   Certainly, that precise question was not there presented for decision.

It is fundamental, under our dual system of government, that the Nation and the State are supreme and independent, each within its own sphere of action; and that each is exempt from the interference or control of the other in respect of its governmental powers, and the means employed in their exercise.   *Bank of Commerce* v. *New York City*, 2 Black, 620, 634; *South Carolina* v. *United States*, 199 U. S. 437, 452, *et seq.; Farrington* v. *Tennessee*, 95 U. S. 679, 685.   " How their respective laws shall be enacted; how they shall be carried into execution; and in what tribunals, *or by what officers;* and how much discretion, or whether any at all shall be vested in their officers, are matters subject to their own control, and in the regulation of which neither can interfere with the other."   *Tarble's Case,* 13 Wall. 397, 407–8. Except as otherwise provided by the Constitution, the sovereignty of the States " can be no more invaded by the action of the general government, than the action of the state governments can arrest or obstruct the course of the national power."   *Worcester* v. *Georgia*, 6 Pet. 515, 570.

In *Bank of Commerce* v. *New York City, supra,* pp. 633–4, a tax case, this Court said: " That government whose powers, executive, legislative or judicial . . . are subject to the control of another distinct Government, cannot be sovereign or supreme, but subordinate and inferior to the other.   This is so palpable a truth that argument would be superfluous.   Its functions and means essential to the administration of the Government, and the employment of them, are liable to constant interruption and possible annihilation. . . .   But of what avail is the function or the means if another Government may tax it at discretion?   It is apparent that the power, function, or means, however important and vital, are at the mercy of that Government.   And it must be always

remembered, if the right to impose a tax at all exists on the part of the other Government, 'it is a right which in its nature acknowledges no limits.' And the principle is equally true in respect to every other power or function of a Government subject to the control of another."

It is settled beyond controversy, that the right of a State to pass laws, to administer them through courts of justice, and to employ agencies for the legitimate purposes of state government cannot be taxed, *Veazie Bank* v. *Fenno,* 8 Wall. 533, 547; and that rule is but an application of the general and broader rule, which forbids any interference by the federal government with the governmental powers of a State. The settlement of successions to property on death is a subject within the exclusive control of the States and entirely beyond the sphere of national authority. See *Tilt* v. *Kelsey,* 207 U. S. 43, 55–6; *Plummer* v. *Coler,* 178 U. S. 115, 137. Upon the death of the owner his property passes under the control of the State and remains there until all just charges against it can be determined and paid and those who are entitled to become its new owners can be ascertained. The duty and power of the State to provide a tribunal for the accomplishment of these ends, *Tilt* v. *Kelsey, supra,* it follows, cannot be abridged by federal legislation.

The right of the owner to direct the descent of his property by will or permit it under statute, as well as the right of a legatee, devisee or heir to receive the property, are rights exclusively derived from and regulated by the State. *Plummer* v. *Coler, supra,* p. 137. During the process of administration the estate, in contemplation of law, is in the custody of the court exercising probate powers, and of this court the executor or administrator is an officer. *Yonley* v. *Lavender,* 21 Wall. 276, 280. "An administrator appointed by a state court is an officer of that court; his possession of the decedent's property is a possession taken in obedience to the orders of that court;

it is the possession of the court. . . ." *Byers* v. *Mc-Auley,* 149 U. S. 608, 615.

In the present case the state legislature, as conclusively determined by the State Supreme Court, has excluded not only national banks but state banks from assuming the functions of executors and administrators, which functions, for reasons satisfactory to itself, it has allowed trust companies to exercise. This determination of the State to grant the right to one and not the other, when it might have excluded both, is plainly the assertion of a governmental policy upon a matter within its exclusive control, with which the federal government has no authority to meddle. Congress may, of course, confer upon national banks the capacity to act as administrators and executors, but I do not think it is within the constitutional authority of that body to make such legislation binding upon the State against its will. The decision just rendered perhaps does not go that far; but it does uphold the power of Congress to impose its will upon the State in this respect if the State, in the exercise of its exclusive authority over the devolution of estates of deceased persons, permits any corporation which competes with national banks to exercise the powers mentioned. This contingency seems to me a slender distinction upon which to found a denial of the State's power. It may be conceded that a State is precluded from enforcing legislation which discriminates against national banks, in respect of private banking or business operations; but a very different situation is presented when the discrimination arises in respect of the governmental operations of the State. A State, for example, cannot be sued in its own courts without its consent; but is it powerless to consent to such suits by financial corporations of its own creation except upon condition that it extends a similar privilege to competing national banks? Legislation requiring all residents of a State to deposit their funds only in state insti-

tutions would undoubtedly be bad against federal legislation to the contrary; but is it beyond the power of the state legislature to subject public moneys—state, county or municipal—to such a restriction? A State may not unconditionally require private debts to be paid only in gold and silver; but, in the exercise of its sovereign power of taxation, it may limit the payment of taxes to gold and silver, if it sees fit, in spite of a federal law making currency a legal tender, and, as this Court has said: "It is not easy to see upon what principle the national legislature can interfere with the exercise . . . of this power." *Lane County* v. *Oregon,* 7 Wall. 71, 77. In my opinion, the exercise of the powers conferred upon trust companies by the legislation here under review, is governmental in its nature; and the fact that the statute discriminates in that matter against national banks (as, also, it does against state banks) is a negligible incident, which does not affect the validity of the statutory limitation.

The probate courts of a State have only such powers as the state legislature gives them. They are wholly beyond the jurisdiction of Congress, and it does not seem to me to be within the competency of that body, on any pretext, to compel such courts to appoint as executor or administrator one who the state law has declared shall not be appointed.

The particular invasion here sanctioned may not be of great moment; but it is a precedent, which, if carried 'to the logical extreme, would go far toward reducing the States of the Union to the status of mere geographical subdivisions. The case is one, to use the phrase of Mr. Justice Brewer in *Fairbank* v. *United States,* 181 U. S. 283, 291–2, for the application of the maxim, *obsta principiis,* not *de minimis non curat lex.*

I am authorized to say that MR. JUSTICE McREYNOLDS concurs in this dissent.