EX PARTE WORCESTER COUNTY NATIONAL
BANK OF WORCESTER.

No. 469.   Argued April 11, 1929.—Decided May 13, 1929.

348

*Mr. Newton D. Baker*, with whom *Mr. William T. Forbes* was on the brief, for appellant.

*Mr. F. Delano Putnam,* Assistant Attorney General of Massachusetts, with whom *Messrs. Joseph E. Warner,* Attorney General, and *R. Ammi Cutter,* Assistant Attorney General, were on the brief, as *amici curiae,* by special leave of Court, on behalf of the Commonwealth of Massachusetts, the Attorney General and the First Judge of Probate of Worcester County.

*Messrs. George P. Barse* and *F. G. Awalt* filed a brief on behalf of Mr. John W. Pole, Comptroller of the Currency, as *amicus curiae,* by special leave of Court.

*Messrs. Walter Wyatt* and *George B. Vest* filed a brief on behalf of the Federal Reserve Board, as *amicus curiae,* by special leave of Court.

*Mr. Robert F. Cogswell* filed the brief of *Mr. Carl Meyer* on behalf of the Continental National Bank and Trust Company of Chicago, as *amicus curiae,* by special leave of Court.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The Worcester County National Bank is a consolidated banking corporation formed by uniting, on June 27, 1927, the Fitchburg Bank & Trust Company, a state institution of Massachusetts, and the Merchants National Bank of Worcester, a national bank of Worcester County, Massachusetts, under the Act of Congress of February 25, 1927, c. 191, 44 Stat. 1224, amending the Act of November 7, 1918, c. 209, 40 Stat. 1044. The amendment added a new section, 3, and this case turns chiefly on the construction, effect and validity of that new section.

The consolidated bank filed in the Probate Court of Worcester County a first and final account of the Fitch-

burg Bank & Trust Company,. executor of the last will and testament of Julia A. Legnard, late of Fitchburg in the county of Worcester. The account was for the period beginning April 21, 1926, and ending February 9, 1928. The account was rendered by the Worcester County National Bank for the Fitchburg Bank & Trust Company to June 27, 1927, and thereafter as its own account.

The Fitchburg Bank & Trust Company had been appointed by the Probate Court executor of the will of Julia A Legnard on April 21, 1926, and qualified by giving bond approved on that day.

The consolidated bank claimed that, in view of the proceedings, its right and duty was to render the account presented for allowance; and as all the parties interested had assented to it, that it should be allowed by the court.

The Probate Court found that the account was in proper form for allowance and should be allowed as rendered, if the said Worcester County National Bank, as successor or otherwise, was executor of said will or had the right to render the account.

The Probate Judge reported a certificate from the Comptroller of the Currency that the two banks had complied with all the provisions of the Acts of Congress and had been consolidated under the charter of the Merchants National Bank with the capital stock of $1,875,000; that the consolidation had been approved, and that pursuant to the Federal Reserve Act, enacted December 23, 1913, § 11 (k), c. 6, 38 Stat. 251, 262, the consolidated bank had permission to act as executor.

He further reported that many estates were being administered by the consolidated bank under a claim of right where the Fitchburg Bank had been appointed administrator, executor or in some other fiduciary capacity, and no new appointment of the consolidated bank in place of the Fitchburg Bank had been made by decree of the Probate Court.

He concluded the report as follows:

" Without action upon said account, I report the above facts and the question of law involved, for the consideration and determination of the Full Court, as to whether the petitioner is entitled to render said account.

" Fredk. H. Chamberlain,

Judge of Probate Court."

After a hearing on the report, a rescript of the Supreme Judicial Court was as follows:

" Ordered that the register of probate and insolvency in said county make the following entry under said case in the docket of said court, viz: The question reported, namely, ' Whether the petitioner is entitled to render said account,' is answered in the negative. Probate Court instructed accordingly."

Following the rescript, the Probate Court made the following entry:

" The foregoing account having been presented for allowance, after rescript from the Supreme Judicial Court (Full Court) and pursuant to the terms of said rescript, it appearing that the Worcester County National Bank of Worcester, the accountant and petitioner in this case, has not succeeded the Fitchburg Bank & Trust Company as executor of the will of said testatrix and is not entitled to render this account, this petition for the allowance of the same is hereby dismissed."

A petition for appeal to this Court, with an assignment of errors, was filed, and an appeal was allowed under § 237 (a) of the Judicial Code, as amended by the Act of February 13, 1925, c. 229, 43 Stat. 936, 937.

The Supreme Judicial Court stated its reasons for the conclusion reached, in an elaborate opinion. 263 Mass. 444.

The court began with a statement of the substance of § 3, in the Act of February 25, 1927, c. 191, 44 Stat. 1224, 1225, providing that any bank, including a trust company

incorporated under the laws of any State, may be consolidated with a national bank located in the same county under the charter of the national bank, on such terms and conditions as may lawfully be agreed upon in the manner specified; that all the rights, franchises, and interests of the state bank in and to every species of property, real, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national bank into which it is consolidated, without any deed or transfer; and that the national bank shall hold and enjoy all this property, franchises and interests, including the right of succession as trustee, executor, or in any other fiduciary capacity, in the same manner and to the same extent as was held and enjoyed by the state bank. The section closes with the limitation: " No such consolidation shall be in contravention of the law of the State under which such bank is incorporated."

The court examined the question whether there was any statute of Massachusetts or any policy declared in its statutes which prevented or forbade such consolidation, and found that there was none, but pointed out that there was a provision in the General Laws of Massachusetts, c. 172, § 44, as amended by Stat. 1922, c. 292, which should be regarded as a limitation upon such consolidation, as follows:

" The charter of a trust company, the business of which shall, on or after July 1, 1922, be consolidated or merged with, or absorbed by, another bank or trust company, shall be void except for the purpose of discharging existing obligations and liabilities."

With this qualification, the court found the field to be left open, under Massachusetts law, to the exercise by Congress of whatever power it possessed over the subject. The court then considered the Congressional power, and cited the case of *Casey* v. *Galli*, 94 U. S. 673, to show that

under § 44 of the Banking Act of Congress, c. 106, 13 Stat. 99, 112, a state bank could change its organization into that of a national bank without any authority given by the State in its charter or otherwise to make the change. The Supreme Judicial Court could not find any distinction between the power of Congress to authorize the conversion of a state bank into a national bank and its power to authorize the consolidation of a state bank with a national bank under the charter of the national bank, and concluded that if no state legislation was necessary to accomplish the conversion, there was no legislation necessary to accomplish consolidation, and that the consolidation of a Massachusetts trust company with a national bank under the § 3 in the Act of Congress of February 25, 1927, was permissible and valid.

The court then considered what was the legal effect of the consolidation of the trust company and the national bank, and emphasized the explicit provision of § 3 that the consolidation was to be under the charter of the national bank. It referred again to the provision of the state law that upon the consolidation, the charter of the trust company should be " void except for the purpose of discharging existing obligations and liabilities." It held that the word " franchises " directed to be transferred to the national bank by virtue of § 3 did not mean its charter or its right to be a corporation, for that would be in contravention of the law of the Commonwealth; that it was only the national bank that retained its corporate identity; that the certificate of the Comptroller did not constitute a charter, but only his approval of the consolidation; that the trust company had gone out of existence and all its property had become the property of the consolidated bank; and that the latter was not a newly-created organization, but an enlargement of the continuously existing national bank. Thus the court found that the

identity of the trust company had not been continued in a national bank, but had been extinguished. The court distinguished this case from cases of union where contract obligations had been held to pass from one of the uniting corporations to the other. Such cases were held not to be applicable to sustain the view that positions of trust like executor, administrator and other fiduciaries could be transferred to the national bank by the mere consolidation under Massachusetts law.

The court then set out at some length the reasons why under the Constitution and practice of Massachusetts the appointment of an executor was a judicial act, and that in the case before the court no one could succeed to the void and defunct State Trust Company as executor except by appointment by the Probate Court. The trust involved was highly personal. The court said:

" To treat the national banking association into which the State trust company has been consolidated as preserving the identity of the trust company in this particular would be contrary to the juridical conception and practice touching the appointment of such fiduciaries under the law of this Commonwealth."

The third question the court discussed and decided was the validity and binding effect on courts of Massachusetts of the declaration in § 3 of the Act of Congress that the right of succession as trustee, executor or in any other fiduciary capacity, would follow to the same extent as it was held and enjoyed by such state bank. It first inquired what was its meaning, and held that it meant that the original appointment of the state bank was to continue wholly unaffected by the fact that the state bank had ceased to be, and that another and different corporation, whose credit, standing and competency had never been the subject of judicial inquiry for this purpose must be substituted by virtue of § 3. The court found that

this result was in contravention of the law of the Commonwealth and contrary to the state and federal Constitutions.

The court found, however, that this provision was not the dominant part of § 3, that the clause was separable and distinct, that the rest of the section could stand independently and that there was no such connection between the two as to indicate that Congress would not have enacted the valid part without the other.

The court, therefore, held that the Worcester County National Bank of Worcester, the accountant and petitioner in the case at bar, had not succeeded the Fitchburg Bank & Trust Company as executor of the will of the testatrix and was not entitled to render an account as such executor; that it could only account as executor *de son tort,* and that the question of the Probate Court must be answered in the negative.

In passing on this appeal, we must observe that, in determining the policy of a State from its statutes and their construction, we of course follow the opinion of the state court except as it may be affected by the federal constitution. When, therefore, the state court holds that an executor, to act as such in the State, must be appointed by the Probate Court, this Court must respect that conclusion and act accordingly. But when the question arises as to what is the proper interpretation and construction of federal legislation, this Court adopts its own view.

It is very clear to us that Congress in the enactment of § 3 in the Act of February 25, 1927, was anxious even to the point of repetition to show that it wished to avoid any provision in contravention of the law of the State in which the state trust company and the national bank to be consolidated were located. So strongly manifest is this purpose that we do not hesitate to construe the effect of § 3 in Massachusetts to be only to transfer the property

and estate from the trust company to the national bank, to be managed and preserved as the state law provides, for administration of estates, and not to transfer the office of executor from the state trust company to the succeeding national bank. As this requires another judicial appointment by a probate court, it would become the duty of a consolidated national bank, after the union, immediately to apply for the appointment of itself as administrator, subject to the examination and approval of the proper probate court. Because of the interest of the national bank in all of the assets of the trust company, including the estate at bar, transferred to its custody, the bank would seem to have a right to make such an application to the Probate Court and await the action of that court. If, on the other hand, it assumed improperly that it was made an executor by the mere consolidation, and held the transferred property as such, it must be held to have become an executor *de son tort* and should bring the assets before the Probate Court and proceed by proper application to secure the appointment of a legal representative by the court, as pointed out by the Supreme Judicial Court in this case and in *Commonwealth-Atlantic National Bank,* 261 Mass. 217, and *Commonwealth-Atlantic National Bank,* 249 Mass. 440.

These views lead us to agree with the conclusions of the Supreme Judicial Court in respect to the legality of the consolidation of the trust company and the national bank and only to differ from it in its construction of § 3, by which it would hold that section unconstitutional under the Constitution of Massachusetts, and so under the Constitution of the United States.

We think § 3 enjoins upon the national bank complete conformity with the Massachusetts law in its conduct of estates of deceased persons when acting as trustee or administrator thereof.

The Supreme Judicial Court refers in its opinion in this case to that of *Commonwealth-Atlantic National Bank of Boston,* 261 Mass. 217, as showing that the consolidated bank in this case could not act as executor. In that case a state trust company was appointed by the probate court as trustee under wills in two cases and as conservator of property in a third. It qualified by giving bond and for some time held and administered the property as fiduciary. Thereafter it was converted into a national bank, which still later was consolidated with another national bank. No new appointment as trustee was made by the probate court. The consolidated national bank petitioned for allowance of accounts as fiduciary. The court held that while the accounts were accurate and complete, the consolidated bank was not a duly appointed fiduciary merely by virtue of the original appointment of the state trust company, and could only account *de son tort.* The court relied on *Commonwealth-Atlantic National Bank of Boston,* 249 Mass. 440. There a state trust company was named as executor in a will. Thereafter it became converted into a national bank, which still later was consolidated with another national bank. The testator having died, the consolidated national bank petitioned for the issuance of letters testamentary to it as the executor named in the will. The court held that it was not the executor named therein, and that the designation of the state trust company as executor did not confer on it a property right passing to its successor, the consolidated national bank.

The court in both *Commonwealth-Atlantic Bank* cases accepted the effect of the decisions in *First National Bank of Bay City* v. *Fellows,* 244 U. S. 416, and *Burnes National Bank of St. Joseph* v. *Duncan,* 265 U. S. 17, the latter holding that national banks may act as executors in a State where state trust companies have that privi-

lege.    The court in 249 Mass. said, "We accept, as we are bound to accept, that principle in all its amplitude and with all its implications," but said that " that principle does not reach to the facts here presented."   There was similar language in 261 Mass.   The Supreme Judicial Court did not then hold, and has not held, that a Probate Court of Massachusetts may not appoint a national bank, otherwise qualified, to be executor, administrator or trustee, if it approves one as such.   In construing § 3, we think it to be in conformity therewith for the national bank, after consolidation, to apply to the Massachusetts Probate Court for appointment as a succeeding fiduciary to carry on the duties.   In the present case, no such appointment has been made by the Probate Court.

Under the Massachusetts authorities, as already cited, the bank in attempting in this case to act as executor has become an executor *de son tort,* and that situation must be disposed of in accordance with the laws applicable in Massachusetts to such a situation.   *Clabborn* v. *Phillips,* 245 Mass. 47.   When the executor *de son tort* has been released, it would seem that application might be made to the Probate Court for appointment of the national bank as administrator to close the estate.   It seems to us that our construction of the Act of 1927, in differing from that of the Supreme Judicial Court of Massachusetts, makes it possible by the appointment of the Probate Judge, if he approves, to enforce the requirements which the laws of that State impose in the execution of such trusts, and still preserve the constitutional effectiveness of § 3.

This result requires us to affirm the dismissal of the petition of the Worcester County National Bank in seeking to render the first and final account of the Fitchburg Bank & Trust Company as executor of the last will and

testament of Julia A. Legnard, deceased, and its own account as executor of her will; but to remand the cause to the Probate Court for a proceeding by the petitioner as executor *de son tort,* and for such further proceedings as it may be advised and as are permissible by the laws of Massachusetts and the statutes of the United States, not inconsistent with this opinion.

*And it is so ordered.*