# Wytheville.

## ALAN J. HOFHEIMER, EXECUTOR, ETC., v. SEABOARD CITIZENS NATIONAL BANK OF NORFOLK.

June 12, 1930.

Absent, Prentis, C. J., and Campbell, J.

The opinion states the case.

*James E. Heath* and *Alan J. Hofheimer*, for the plaintiff in error.

*A. B. Seldner* and *S. Heth Tyler*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Henry Hofheimer, a citizen of Norfolk, died testate there on September 23, 1928. His will bears date October 12, 1925, and by codicil of date May 24, 1927, he nominated as his executors a nephew, Alan J. Hofheimer, and the Citizens Bank of Norfolk, a Virginia corporation.

On the 2nd of July, 1928, the Citizens Bank of Norfolk was consolidated with, or was merged into, the Seaboard National Bank of Norfolk, thereafter known as the Seaboard Citizens National Bank of Norfolk,

and on the 22nd day of December, 1928, that bank and Alan J. Hofheimer, over the objection of the latter, were both permitted by an order of the Circuit Court of the city of Norfolk to qualify and did qualify as executors of said decedent. This bank was not named as one of the executors in the will, and such authority as it had came about by reason of this merger or consolidation with the Citizens Bank of Norfolk, which was named.

The merger rests upon an act of Congress, approved February 25, 1927, chapter 191, section 1, 44 U. S. Stat. at Large, part 2, pages 1224, 1225 (12 USCA, section 34a), amending an act approved November 7, 1918, chapter 209, 40 U. S. Stat. at Large, 1044, by adding at the end of said chapter 209 a new section, being section 3 thereof. See act of Congress of May 1, 1886, chapter 73, section 2 (24 U. S. Stat. at Large, 18), 12 USCA, section 30).

The pertinent part of said section 3 provides that any bank incorporated under the laws of any State, "may be consolidated with a national banking association located in the same county * * under the charter of such national banking association on such terms and conditions as may be lawfully agreed upon * * * and all the rights, franchises, and interests of such State * * * bank so consolidated with a national banking association in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises, and interests, including the right of succession as trustee, executor, or in any other fiduciary ca-

pacity in the same manner and to the same extent as was held and enjoyed by such State * * * bank so consolidated with such national banking association. * * * No such consolidation shall be in contravention of the law of the State under which such bank is incorporated."

This act, and particularly said section 3, was held to be constitutional in *Ex Parte Worcester County Nat. Bank*, 279 U. S. 347, 49 S. Ct. 368, 73 L. Ed. 733, 61 A. L. R. 987.

There is no statute in Virginia and no policy in Virginia which prevents or forbids such consolidation. Indeed both plaintiff and defendant contend that they are expressly authorized.

The banking laws of Virginia were codified by an act of the legislature approved March 27, 1928 (Acts 1928, chapter 507, page 1304). Plaintiff relies upon section 8 of that act, which is:

"*State bank becoming national bank; notice to chief examiner of banks; effect.*—Whenever any bank shall have become a corporation for carrying on the business of banking under the laws of the United States, it shall notify the chief examiner of banks of this State of such fact, and shall file with him a copy of its authorization as a national banking association certified by the comptroller of the currency. It shall thereupon cease to be a corporation under the laws of this State, except that for a period not exceeding three years thereafter its corporate existence shall be deemed to continue for the purpose of prosecuting or defending suits by or against it, and of enabling it to settle and close its affairs, to dispose of and convey its property and to divide its capital, but not for the purpose of continuing the business for which said corporation shall have been established.

"Such change from a State to a national bank shall

not release any such bank from its obligations to pay and discharge all the liabilities created by law or incurred by it before becoming a national banking association, or any tax imposed by the laws of this State up to the date of its becoming such national banking association in proportion to the time which has elapsed since the next preceding payment therefor, or any assessment, penalty or forfeiture imposed or incurred under the laws of this State up to the date of its becoming a national banking association."

The defendant contends that this section applies only when a State bank is changed into a national bank, and not when merged into it, and cites us to section 9a of the act last above referred to, where it is provided:

"*State banks may be merged or consolidated with other State or with national banks; by what laws such mergers or consolidations governed; vote required.*—Any bank organized and doing business under the laws of this State may be merged or consolidated with another bank organized and doing business under the laws of this State, or with a banking corporation organized under the laws of the United States doing business in this State, upon compliance with the provisions of sections thirty-eight hundred and twenty-one and thirty-eight hundred and twenty-two of the Code of Virginia relating to mergers or consolidations of corporations, except that such mergers or consolidations of banks shall be ratified or confirmed by an affirmative vote of the shareholders of each of such banks owning at least two-thirds of its capital stock outstanding and having voting power. The provisions of sections thirty-eight hundred and twenty-three, thirty-eight hundred and twenty-five and thirty-eight hundred and twenty-six of the Code of Virginia shall apply to such merged or consolidated corporation, except as otherwise provided in this act."

■ An examination of those statutes to which reference is here made shows that they apply only to a case where a national bank is consolidated with a State bank and becomes a domestic corporation under ·control of the State Corporation Commission.

Unless section 8 applies, there is no State statute applicable to the merger of a State bank or trust company into and with a national bank, and such State statutory permission is not necessary. *Casey* v. *Galli*, 94 U. S. 673, 24 L. Ed. 168; *Ex Parte Worcester County Nat. Bank, supra.*

■ These mergers of State banking and trust companies with national banks are not consolidations in any true sense. The State bank is absorbed and the national bank continues to function with powers limited and defined by Congress. When the merger was effected the State bank ceased to function. If its corporate existence was not terminated, it could, in the nature of things, have been continued only for the purpose of enforcing antecedent rights and of answering antecedent liabilities. It could not continue the banking business, as it had heretofore conducted that venture, after transferring its assets to the new bank. When this transfer had, at the instance of its stockholders, been completed, and when they had been settled with for their interest, its life as a going concern was at an end independent of statute. It is likewise true that such charter rights of the old company as the national bank took over, it took by virtue of Federal law, and not as an independent inheritance from the State corporation. It could do those things which other national banks similarly circumstanced could do and no more. For example, if the State bank had the charter right to lend its credit through accommodation endorsements, the national bank would have taken over no such right; it continued

to function under the Federal statute. The new national bank was not the old State bank. It was merely a national bank with added powers between which and the State bank there was no continuity of corporate existence.

We have seen that those State statutes referred to in section 9a are not applicable, and that under the provisions of said section 3 of the Federal act the new bank is an entity created by the national government and by it only. The status of the old State bank is exactly what it would have been had it been converted directly into a national bank, and so under section 8 of our State banking law it ceased to function as a bank. In other words, that section applies to this situation, but if it did not the issue before us would not be in the slightest degree affected. It is but a statutory recognition of a situation which existed independent of the statute, and by virtue of a consolidation under Federal law which did not need State approval. The State might have blocked it, but, as we have seen, it has indicated no purpose to do so, and so the Federal provisions apply in full virtue. They tell us just what is taken over, namely, "the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State * * * bank so consolidated with such national banking association."

■ At the date of the consolidation, Hofheimer was still alive. The national bank succeeded to the rights of the State bank "to the same extent as was held and enjoyed by such State * * * bank." The State bank held and enjoyed nothing and the national bank succeeded to nothing.

■ "The naming of the trust company as executor in he will was not a thing which, under the terms of the

several statutes, passed as property or an asset when the trust company was converted into a national bank or when that bank was consolidated into the petitioner. The designation in a will of one as executor does not confer a property right upon the person so designated. However precious may be the mark of confidence bestowed by such nomination, it does not amount to property. There is nothing tangible about it. Nothing vests in a person so nominated by the mere execution of the will. It can stand on no firmer ground than a devise or bequest in the will of a living person. The will is ambulatory and may be changed, revoked or canceled by the maker at any time during his life." *In re Commonwealth-Atlantic Nat. Bank*, 249 Mass. 440, 144 N. E. 443, 445.

In the *Worcester County National Bank Case* there was but one executor. The testator's death occurred before the consolidation and the State bank qualified as executor before that consolidation or merger took place. The estate was then in process of administration by the State bank, and to its rights and liabilities the national bank succeeded. That it should have been permitted to requalify and continue to discharge these trust duties to which it had succeeded was a right given by the said section 3 of the consolidating Federal statute, and this the United States Supreme Court held. In that case there was something to succeed to. In the case in judgment there is nothing.

The selection of an executor is an intensely personal matter. No business transaction which men must face is more so, and not by remotest indirection should the State trench upon this privilege except for cogent reasons. It may be that Mr. Hofheimer selected the Citizens Bank of Norfolk because he knew its president or trust officer, and by reason of special confidence

wished to confer upon him *post mortem* management of his affairs. Certainly there was some reason, to him satisfactory and sufficient. So far as the record has spoken, he never heard of the national bank, did not select it, and knew nothing about its trust officials. We may and do assume that this institution would discharge its duties with the utmost fidelity, but that is not all. If one intended to build a house, any contractor, faithful, solvent and competent, would do, but private reasons bring in many new factors when the administration of an estate is contemplated. Reasons beyond those that attach to ordinary business transactions may and frequently do control.

Under Code, sections 5160 and 5385, the right of survivorship is preserved, and Alan J. Hofheimer is entitled to qualify as the sole surviving executor of Henry Hofheimer, deceased. It is so ordered.

*Reversed.*

NOTE: A rehearing in the foregoing case was granted and an opinion handed down after this case was put in type. Please refer to page 896 for the opinion on the rehearing.