## Alt v. Liberty National Bank & Trust Co.

(Decided June 14, 1935.)

STANLEY GARFEIN for appellant.

PETER, HEYBURN, MARSHALL & WYATT and JOHN MARSHALL, Jr., for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

The appellee, Liberty National Bank & Trust Company, was organized many years ago, under the general laws of the state, as a commercial bank. By an act of

1920 (Ky. Stats. sec. 598b-1 et seq.), it was given authority, as were other state and national banks, to exercise fiduciary powers, and; pursuant to the act of 1920, it set up and organized a trust department and has acted in various fiduciary capacities. On January 8, 1935, the Liberty Bank & Trust Company was converted, pursuant to Section 35, title 12, USCA, into a national banking association under the name of Liberty National Bank & Trust Company of Louisville. Shortly after its conversion, its right to continue to act as fiduciary under the original appointments of the state bank was questioned by various interested parties, including appellant. Appellee filed this suit for a declaration of rights against appellant (the sole presently interested beneficiary of an estate in which the state bank had been appointed executor and trustee before its conversion) asking for an adjudication of its right to deal with the estates held by it at the time of its conversion. The chancellor held that a state bank does not ipso facto forfeit or vacate the office of trustee by conversion into a national bank, and may continue to act under the original appointments of the state bank. Complaining of this judgment, appellant has brought the case to this court for review. The state bank was serving as executor of the estate here involved at the time of its conversion, and the successor national bank was preparing to settle the accounts and distribute a portion of the estate to itself as trustee (under the appointment of the state bank), when the question here presented was raised.

The right of a state bank to continue to act in a fiduciary office without requalification after its conversion into a national bank, and the right of a national bank to qualify in fiduciary office to which the state bank has been appointed, is a matter of state law, and not of federal law. Ex parte Worcester County National Bank of Worcester, 279 U. S. 347, 49 S. Ct. 368, 73 L. Ed. 733, 61 A. L. R. 987. We must determine, therefore, first, whether the Legislature of Kentucky has the power thus to continue the new entity in a fiduciary office held by the state bank, and, second, if the Legislature has the power, whether or not it has exercised it.

By an act of 1912, sec. 1 (Ky. Stats. sec. 603a-1), the Legislature authorized the consolidation of two or more

trust companies organized under the laws of this state, and expressly authorized the consolidated corporation to exercise "all duties, powers and discretions of the constituent companies." By an act of 1897 (Ky. Stats. sec. 612a) the Legislature authorized the creation of corporations to do both a trust and banking business, and provided that "any corporation now doing either a banking or trust business * * * may, with the consent of a majority, in number and interest, of its stockholders, organize under this section. * * *". By a similar act, passed in 1910 (Ky. Stats. sec. 883c-1 et seq.), the Legislature authorized the creation of combined trust, banking, and title insurance companies, and gave similar authority to banks, trust companies, or combined bank and trust companies, or real estate title insurance companies to organize under the act. In none of these cases has the power of the Legilsature to continue the new corporation in the fiduciary offices held by the old corporation been questioned, but the right has been accepted as beyond cavil. In the case of In re Barnett's Estate, 97 Cal. App. 138, 275 P. 453, 456 (hearing denied by the Supreme Court of California), a state bank was appointed trustee under a will. A series of consolidations and transfers wound up with a national bank in possession of the estate, asking to file an account as fiduciary under the original appointment. The beneficiaries of the trust asked that the settlement "be stricken from the files" on the ground that the statutes under which the transfers and conveyances had been made were void. In allowing the national bank to make the settlement, the court said:

> "But, to our minds, there is one principle which controls a situation of this kind and that is the principle of consent of the parties. The Legislature, as we have stated, having the power to enact the legislation, and the trust having been created in contemplation of it, the consent of all parties to the legislative method of substitution of trustees must be deemed to have been given. Mr. Justice Hart, in the Mercantile Trust Case [89 Cal. App. 558, 265 P. 583], expressed the same thought in this language: 'The statute authorizing the consolidation or merger of banking corporations, in so far as it prescribes a scheme for the transfer of their properties, * * * enters into and becomes

a part of every agreement or obligation \* \* \* and of this the defendant (the trustor), its directors, and bondholders are presumed to have known before and at the time of the execution of the trust deed \* \* \* and \* \* \* to have impliedly assented to the exercise of the legal right of said bank to merge \* \* \* with all the consequences following such merger or consolidation as are prescribed by the law.' The right of the trustor to provide a method of filling vacancies and for appointment of successors in the trust is not disputed. 26 R. C. L. p. 1278. But when a trustor, in full contemplation of the provisions of the Bank Act relating to the sale, consolidation, or merger of banking corporations, voluntarily designates such a corporation as trustee he must be deemed to have adopted and included within his declaration of trust the full scheme for substitution of trustees prescribed in that act. No more forceful application of this principle could be made than in a case such as we have here of a testamentary trust, because the right to make a testamentary disposition of property is not an inherent right, but one which depends entirely upon the consent of the Legislature. Thus, when the Legislature has prescribed the rules and conditions under which the disposition and administration of estates may be had, the testator is deemed to intend the result which such rules produce and 'they affect the testamentary disposition and provisions as though embodied in the will'.''

A similar conclusion was reached in the case of In re Barreiro's Estate, 125 Cal. App. 153, 13 P. (2d) 1017, wherein the court referred to the Barnett Case, supra, and reviewed numerous other authorities. In view of these authorities, and in view of the instances where the Legislature of Kentucky has without question provided for the continuation in a fiduciary office of a trustee that has undergone some mutation, we conclude that the Legislature has the power to authorize the continuance in a fiduciary office of a national bank succeeding by conversion under the statutes to the rights and liabilities of a state bank. It remains to be considered whether or not the power has been exercised, and this involves a careful examination of the applicable statutes and of their historical background.

Chapter 171 of the Acts of 1893 (now Ky. Stats. sec. 538 et seq.) provided for the creation and regulation of private corporations. Article 2 of the act related to the creation of commercial banks, and in section 51 (now Ky. Stat. sec. 588) provided:

"Any state bank desiring to reorganize under the laws of the United States as a national bank may, after its dissolution, and as soon as it obtains authority from the comptroller of the currency to commence business, retain and hold any of the assets, real or personal, which it acquired during its existence under this article, subject, however, to all liabilities existing against the bank at the time of its reorganization."

An examination of the act of 1893 demonstrates that this section of it relates solely to commercial banks. The reason, of course, is apparent. At that time national banks were strictly limited in their powers and could only do a commercial banking business. It was then quite generally considered to be improper to combine the power to act as fiduciary with the business of banking. Economic considerations, however, brought about the necessity for corporate trustees in communities too small to support trust companies who had no right to do commercial banking, and the commercial banks quite naturally succeeded to these powers. As originally enacted, the act of 1897, referred to above (Ky. Stats. sec. 612a), limited the creation of "combined bank and trust companies" to counties having a population of less than 100,000. This limitation was removed by chapter 146 of the Acts of 1906. As a result of these statutory developments, and the changed point of view in regard to the business of banking, occurring not only in Kentucky but throughout the Union, commercial banks organized under the laws of the various states took over as an incident of their banking business a tremendous amount of trusts formerly handled by individuals or trust companies. Similarly, and to meet competition, trust companies very largely entered into the commercial banking field through reorganization as combined banks and trust companies. For perhaps a decade national banks, in keen competition with trust companies and state banks, suffered under the limitations upon their powers result-

ing from their inability to act in a fiduciary capacity. Even in those states where the distinction between banks and trust companies was preserved, national banks suffered to some extent as a result of competition from trust companies where their fields conflicted. In order to meet this competition and to preserve the other functions necessary to the federal fiscal policies exercised by national banks, Congress in 1913 enacted section 11 (k) of the Federal Reserve Act [see 12 USCA sec. 248 (k)], authorizing national banks to act as trustee, executor, etc. The constitutionality of section 11 (k) was vigorously attacked and was upheld by the Supreme Court of the United States in the case of First National Bank v. Fellows ex rel. Union Trust Co., 244 U. S. 416, 37 S. Ct. 734, 61 L. Ed. 1233, L. R. A. 1918C, 283, Ann. Cas. 1918D, 1169, wherein that court, speaking though Chief Justice White, held that while the right to exercise fiduciary powers was not inherently such that Congress could empower national banks to exercise them, such rights might nevertheless become appropriate if, by state law, state banking corporations, trust companies, or other rivals of national banks, had such powers. The added powers were justified as an incident of the business of banking. This case was decided by the Supreme Court in 1917. As a result of it, national banks, acting under paramount federal authority, were permitted to exercise trust functions in Kentucky, although such powers were denied to state institutions doing only a commercial banking business, as distinguished from trust companies and combined bank and trust companies. Thus, strictly commercial banks in Kentucky were placed at a disadvantage in competing with national banks. In order to remedy this situation, the Legislature in 1920 passed an act authorizing state banks theretofore doing only a commercial banking business and national banks to exercise all fiduciary powers theretofore conferred only on trust companies and combined bank and trust companies. The only limitation upon the exercise of these fiduciary powers was that the bank, whether state or national, should have unimpaired capital and surplus aggregating $80,000 or more. Whether or not the Legislature has the power to limit the exercise of trust functions to national banks having a capital and surplus in excess of $80,000, it is not necessary for us to decide. Compare State of Missouri

ex rel. Burnes National Bank v. Duncan, 265 U. S. 17, 44 S. Ct. 427, 68 L. Ed. 881. At all events, it seems to us to be clear that the Legislature, in enacting section 598b-1 et seq. in 1920, had in mind the situation presented by the passage of section 11 (k) of the Federal Reserve Act, and the decision of the Supreme Court of the United States in First National Bank v. Fellows ex rel. Union Trust Co., supra, and that it was the intention of the Legislature to permit the exercise of trust powers by commercial banks as an incident to the business of commercial banking in all cases where capitalization of the institution exceeds $80,000. It follows from this that the conversion of a state bank with trust powers into a national bank with the identical powers under the statute would carry with it, under section 588, supra, as an incident of its banking business, the continuation of the fiduciary offices held by the bank as a state institution.

It is argued, however, that the office of trustee cannot be continuous because section 588 provides for the reorganization of a state bank as a national bank "after its dissolution." We do not think these words are open to the suggested construction that they are to be read as synonymous with "after its liquidation." There would be no need for a statute authorizing conversion if a state bank first had to go into voluntary liquidation and then commence anew as a national bank. The right to convert was given to the bank itself as one of its corporate powers. We think the words mean nothing more than that the state bank must surrender its charter as a state institution before "reorganization" as a national bank.

In Metropolitan Nat. Bank v. Claggett, 141 U. S. 520, 12 S. Ct. 60, 62, 35 L. Ed. 841, a state bank called in its circulating notes and, under the laws of New York, converted into a national banking association. Suit was filed against the national bank, asking for judgment against it on some of the outstanding bills of the state bank. The Court of Appeals of New York held the national bank to be liable. Claggett v. Metropolitan Nat. Bank, 125 N. Y. 729, 26 N. E. 757. In affirming that judgment, the Supreme Court said:

"The court decided that the New York statute providing for a redemption of circulating notes, and

for releasing the bank, if the notes were not presented in six years, applied alone to banks 'closing the business of banking;' that the change or conversion of the Metropolitan Bank into the Metropolitan National Bank did not 'close its business of banking,' nor destroy its identity or its corporate existence, but simply resulted in a continuation of the same body with the same officers and stockholders, the same property, assets, and banking business, under a changed jurisdiction; that it remained one and the same bank, and went on doing business uninterruptedly; and that, therefore, the statutory proceedings relied upon in the answer could not operate as a bar to the liability of either bank to pay the bills delivered by the Metropolitan Bank in 1861 to plaintiffs' intestate.

"This decision is so manifestly correct that it needs no argument to sustain it. * * *"

The appellee had, before the conversion, secured the necessary permit from the Federal Reserve Board to exercise trust powers. There was, therefore, no hiatus between its existence as a state institution and its reorganization as a national institution, nor any hiatus between the surrender of the old trust powers and the acquisition of the new.

It follows from what we have said that appellee is entitled, under the authority of the applicable statutes, to continue, without requalification, in the office of executor under the will here in question, and now to qualify as trustee under the appointment of its predecessor, the state bank. What we have said, however, should not be construed as limiting the power of any court under whose appointment appellee is acting to consider the adequacy of security of any bond or other obligation under which appellee may have qualified in view of the changed status brought about by the conversion of the state bank into a national bank.

Judgment affirmed.

Whole court sitting.