STEVENS, ordinary, etc., *v.* FIRST NATIONAL BANK & TRUST COMPANY.

No. 8081.  September 11, 1931.

*Brock, Sparks & Russell,* for plaintiff in error.

*Jones, Jones, Johnston & Russell, Spalding, MacDougald & Sibley,* and *Brandon & Hynds,* contra.

*Adams, Adams & Douglas,* for persons at interest, not parties of record.

Russell, C. J.  This was an application for mandamus. Exception was taken to the judgment of the court making the manda-

mus absolute. Continental Trust Company, a corporation authorized under the law of this State to act as a trustee, was the administrator of the estate of Mrs. Annie N. Crutchfield under appointment by the ordinary of Bibb County, and had fully administered the estate, but it had not made a final return and been discharged when it was consolidated with the Macon National Bank on August 30, 1930, since which time the consolidated institutions have been transacting business under the name of "The First National Bank & Trust Company in Macon," the Comptroller of the Currency having approved the consolidation on that date. The consolidation was made in accordance with the provisions of an act of Congress of the United States, entitled "An act to provide for the consolidation of national banking associations," approved November 7, 1918, and amended on February 25, 1927, the provisions of said amendment applicable to said transaction constituting section 34a of U. S. C. A., which provides, among other things: "And the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises, and interests, including the right of succession as trustee, executor, or in any other fiduciary capacity, in the same manner and to the same extent as was held and enjoyed by such State or district bank so consolidated with such national banking association." On September 27, 1930, the First National Bank & Trust Company in Macon, purporting to act as administrator of the estate of Mrs. Crutchfield, tendered to the ordinary of Bibb County a first and final return of the administrator on said estate, with an application for discharge as such administrator. The ordinary refused to receive the return or application, or to permit them to be filed in his office, holding that petitioner was not the administrator of said estate. Petitioner then applied to the superior court for a writ of mandamus requiring the ordinary to receive and file the return and application for discharge.

Walter C. Stevens, ordinary of Bibb County, demurred to the petition as setting forth no facts justifying the grant of the writ prayed for, because (a) the facts set forth in the petition show that the First National Bank & Trust Company in Macon has never qualified as administrator of the estate of Mrs. Annie N. Crutchfield, but the legally appointed and qualified administrator of Mrs. Annie N. Crutchfield is the Continental Trust Company; (b) under

the facts alleged in the petition the First National Bank & Trust Company in Macon is not the successor in law of the Continental Trust Company to the office of administrator of the estate of Mrs. Annie N. Crutchfield; (c) under the facts alleged in said petition the First National Bank & Trust Company in Macon is a separate, distinct, and different legal person or entity from that of the Continental Trust Company, and did not by virtue of the consolidation become the administrator of the estate of Mrs. Annie N. Crutchfield; (d) under the facts alleged, the petitioner is not the administrator of the estate for which it seeks to make a final return, and has no right to make said final return and no right to apply for a discharge. Respondent also answered, admitting the allegations of the petition as to the consolidation of the institutions as stated in the petition, but denying that such consolidation authorized him to receive the return or grant the discharge as administrator. On the hearing the judge overruled the demurrer and granted a mandamus absolute as prayed for. The respondent excepted.

The applicant for mandamus does not claim to have been nominated by any court, or in any judicial proceeding, to act as administrator of Mrs. Annie N. Crutchfield, but bases its right upon a transfer of the administratorship of Mrs. Crutchfield's estate from the Continental Trust Co. under a contract by virtue of which the Continental Trust Co. and the Macon National Bank were merged and consolidated into the present defendant in error as successor of the Continental Trust Co. The Continental Trust Co. was granted letters of administration on Mrs. Crutchfiield's estate, but this application for a discharge was not presented in the name of the Continental Trust Co., nor does it appear that the First National Bank & Trust Company in Macon has ever made application to the court of ordinary of Bibb county to be appointed administrator, or that it has ever given bond in terms of the law to faithfully administer the trust. The petitioner bases its application for mandamus solely upon the provisions of 12 U. S. C. A. § 34a, as follows: "Any bank incorporated under the laws of any State, or any bank incorporated in the District of Columbia, may be consolidated with a national banking association located in the same county, city, town, or village under the charter of such national banking association, on such terms and conditions as may be lawfully agreed upon by a majority of the board of

directors of each association or bank proposing to consolidate, . . and all the rights, franchises, and interests of such State or District bank so consolidated with a national banking association in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated, without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises, and interests including the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State or District bank so consolidated with such national banking association. . . No such consolidation shall be in contravention of the law of the State under which said bank is incorporated."

The question thus presented narrows down to an inquiry as to whether the transfer of the powers of one corporation exercising the office of administrator to another corporation, and thereby effecting the change from one administrator to another, is in contravention of the law of the State of Georgia upon the subject of administration. To say that one individual could offer to the ordinary an application to file his first and final return and be discharged as administrator of a named intestate, without ever having applied to be appointed administrator, and without any knowledge on the part of the court of ordinary that he was purporting to act as administrator except from what might come from the declaration of the purporting administrator, must be conceded would not authorize the issuance of a mandamus requiring an ordinary to deal with the purporting administrator—a mere individual who had had himself substituted for an administrator appointed by the ordinary, and consider the petitioner in such a case as a lawful administrator of a different individual who had been appointed administrator of a named estate. "Every application for letters of administration must be made to the ordinary of the county of the residence of the deceased, if a resident of this State; and if not a resident, then in some county where the estate or some portion thereof is." Civil Code (1910), § 3969. "The ordinary must issue a citation, giving notice of the application to all concerned, in the gazette in which the county advertisements

are usually published, once a week for four weeks, and at the first regular term after the expiration of that time the application should be heard or regularly continued." § 3970. Every administrator, when qualified, must take the oath prescribed by law (§ 3971), and give bond (§ 3972) "with good and sufficient security, to be judged of by the ordinary, in a sum equal to double the amount of the estate to be administered; such bond shall be payable to the ordinary for the benefit of all concerned, and shall be attested by him or his deputy, and shall be conditioned for the faithful discharge of his duty as such administrator, as required by law." Under § 3973, the administrator's bond shall be kept on file by the ordinary after being first recorded within six days after its execution; and under § 3974 suit may be brought or attachment issued against both the administrator and the surety, without the necessity of any prior judgment establishing the liability of the administrator or a devastavit by him. We refer only to these sections relating especially to the manner in which the right of administration upon the estate of an intestate must be obtained, and the peculiar importance which is attached to the requirement that a bond shall be given, approved by the ordinary, and witnessed by the ordinary or his deputy. The numerous rules regulating the administration of estates comprise chapter 3 in its entirety in our code of laws, embracing 16 subdivisions, and include §§ 3935-4105 of the Civil Code of 1910. The provisions of these sections are quite familiar to the profession generally.

Two questions arise: (1) Can the ordinary, by a mere contract, be divested of his power of appointment and a substitute provided without his permission or consent, who shall not be required to give a bond, and as to whose appointment by substitution the ordinary shall have no discretion? (2) If the ordinary can be compelled to accept a substitution of administrators, and forced to accept a return from a corporation which he has never appointed as administrator of the estate in question, and discharge it without it ever having given the bond required by law, would this not be in contravention of the code provisions to which we have referred? It is very clear to us that such a proceeding would be in contravention of our laws upon this subject. This court only recently decided the case of *Mueller* v. *First National Bank of Atlanta*, 171 *Ga.* 845 (156 S. E. 662), in which it was held that

where a national bank had been nominated as executor by a testatrix, and this executor-bank afterwards consolidated with another national bank during the life of the testatrix, the consolidated bank had the right to qualify and act as executor of the will. As plainly appears from the facts in that case, that ruling was not in contravention of any law in this State. As pointed out in the opinion, the testatrix lived for several months after the consolidation, and did not change her will as she could have done by the nomination of a different executor. The consolidation and transfer of the executorship, as was correctly held in the *Mueller* case, is not in contravention of our laws upon the subject of executorships, but is in accord with it. As pointed out in the *Mueller* case, where the testator named his executor, it is with the knowledge that if his chosen executor should die and himself nominate an executor of his own will, the executor of his executor would thereby succeed in the execution of the trust. The case of administrators is altogether different. An executor derives all his power from the testament. It is the law of the case. Upon the nominated executor devolves a personal trust delegated by the maker of the will. It is for this reason that if I select an executor and he dies, this personal trust delegated by me naturally descends to his executor, the law implying that I not only desired him to execute my will but that I am willing for him to devolve the duty imposed upon him to whomever he may select for that purpose as well as to administer upon his own estate. The administrator is a creature of the law, governed by uniform rules as a matter of law. This being true, there is no contact or succession from one administrator to another, except as governed by the provisions of law. The law upon this subject is so explicit that it can not be said that the administration of an estate by a corporation, differently from the case where an individual might be administrator, can become a matter of bargain and sale, or of contract of any kind, independently of the judgment of the court of ordinary, which has been held time and again to be a court of original and competent jurisdiction in matters affecting the administration of estates. The proviso of the act of Congress hereinbefore quoted, permitting the merger or consolidation of two or more banks, might have authorized the transfer or substitution of administrators, as contended by the defendant in error; but it appears to us that by the

proviso, in which it is enacted that "no such consolidation shall be in contravention of the law of the State under which such bank is incorporated," Congress expressly preserved the right of each State to deal with the property rights of heirs or legatees or creditors in the distribution of the estates of decedents.

We do not deem it necessary to cite any further authority (and certainly no higher authority can be found) than the ruling of the Supreme Court of the United States in Ex Parte Worcester County National Bank of Worcester, 279 U. S. 347 (49 Sup. Ct. 368, 73 L. ed. 733, 61 A. L. R. 987), which was delivered by the late Chief Justice Taft. This case came to the Supreme Court of the United States from the Supreme Judicial Court of Massachusetts, where the opinion of the court was delivered by Chief Justice Rugg. In that case, as in this, the consolidation was that of a State and a National bank. In that State, unlike Georgia, executors are required to be qualified by the probate courts, just as administrators are required to be appointed in Georgia under the provisions of § 3969 et seq. of our Code. The same contentions were made as are presented by the briefs in the case now sub judice. The Supreme Judicial Court of Massachusetts held: "Consolidation of a Massachusetts trust company with a national banking association by the method prescribed in § 3, added to c. 209, 40 U. S. Sts. at Large, 1044, by 44 U. S. Sts. at Large, Part 2, 1224, 1225, is permissible and valid. Upon such consolidation, the trust company goes out of existence, except for the purpose of discharging existing obligations as required by the last words of G. L. c. 172, § 44, as amended by St. 1922, c. 292; and its assets become the property of the national banking association, which is not a newly created organization but an enlargement of the continuously existing national bank. As a result of such consolidation, the identity of the trust company as an executor under a will, appointed by a probate court of this Commonwealth, is not continued in the national banking assocation, but is extinguished. The trust arising from appointments by a probate court of this Commonwealth to such positions as executor, administrator, and the like is highly personal; it is not contractual, is not a property right, and involves no pecuniary right on the part of the fiduciary. The words of § 3 added to c. 209, 40 U. S. Sts. at Large, 1044, by 44 U. S. Sts. at Large, Part 2, 1224, 1225, carry the un-

mistakable import that in case of the consolidation therein described the national banking association shall possess and enjoy all appointments as executor, administrator, or other fiduciary held by the absorbed State bank by virtue of any decree of any court, without further action by the appointing court, as fully and completely as if it were the State bank, or as if it originally had been appointed to these fiduciary positions by the court. Such succession of the national banking association, without action of a probate court, to the fiduciary relation formerly occupied by the trust company under appointment of a probate court of this Commonwealth, would be, in the words of § 3, 'in contravention of the law' of this Commonwealth, and outside the power and authority of the Congress. That portion of said § 3 which provides for succession upon such consolidation of the national banking association, without action by a probate court, to the fiduciary relation held by the trust company under an appointment by a probate court of this Commonwealth, is subsidiary and incidental to, and separate and distinct from, the main object of the section; so that a consolidation within its terms may be valid although, after it is effected, the national banking association can not without a decree of a probate court succeed to a fiduciary relation formerly held by the trust company under such a decree. After such a consolidation of a Massachusetts trust company and a national banking association, the national banking association is not entitled, as 'successor' to the trust company, to render to a probate court, which previously had appointed the trust company as executor under a will, the first and final account of the executor."

Upon appeal to the Supreme Court of the United States Mr. Chief Justice Taft, delivering the opinion, said: "In passing on this appeal, we must observe that, in determining the policy of a State from its statutes and their construction, we of course follow the opinion of the State court except as it may be affected by the Federal constitution. When, therefore, the State court holds that an executor, to act as such in the State, must be appointed by the probate court, this court must respect that conclusion and act accordingly. But when the question arises as to what is the proper interpretation and construction of Federal legislation, this court adopts its own view. It is very clear to us that Congress in the enactment of § 3 of the act of February 25, 1927, was anxious, even to

the point of repetition, to show that it wished to avoid any provision in contravention of the law of the State in which the State trust company and the national bank to be consolidated were located. So strongly manifest is this purpose that we do not hesitate to construe the effect of § 3 in Massachusetts to be only to transfer the property and estate from the trust company to the national bank, to be managed and preserved as the State law provides, for administration of estates, and not to transfer the office of executor from the State trust company to the succeeding national bank. As this requires another judicial appointment by a probate court, it would become the duty of a consolidated national bank, after the union, immediately to apply for the appointment of itself as executor, subject to the examination and approval of the proper probate court. Because of the interest of the national bank in all of the assets of the trust company, the bank would seem to have a right to make such an application to the probate court and await the action of that court. If, on the other hand, it assumed improperly that it was made an executor by the mere consolidation, and held the transferred property as such, it must be held to have become an executor de son tort and should bring the assets before the probate court and proceed by proper application to secure the appointment of a legal executor by the court, as pointed out by the Supreme Judicial Court in this case and in Commonwealth-Atlantic National Bank, 261 Mass. 217, and Commonwealth-Atlantic National Bank, 249 Mass. 440. . . We think § 3 enjoins upon the national bank complete conformity with the Massachusetts law in its conduct of estates of deceased persons when acting as trustee or administrator thereof." The headnotes in the Worcester National Bank case, supra, in our opinion, very aptly state the law applicable to the case at bar. "The act of February 25, 1927, provides that any national bank may be consolidated with any State bank or trust company under the charter of the national bank; that, upon such consolidation, all the rights, franchises, and interests in the property of the State corporation shall be deemed transferred to and vested in the national bank; that the consolidated national bank 'shall hold and enjoy the same and all rights of property, franchises, and interests, including the right of succession as trustee, executor, or in any other fiduciary capacity, in the same manner and to the same extent as was held and enjoyed' by

the State corporation; but that no such consolidation shall be in contravention of the law of the State under which such State bank or trust company was incorporated. *Held:* 1. That the act enjoins upon a consolidated national bank complete conformity with the State law in its conduct of estates of deceased persons when acting as trustee or administrator thereof. . . Where the highest State court decided that, under the State law, a national bank with which a local trust company had been consolidated under the act did not succeed to an executorship held by the trust company and could not render an account of the estate, except as executor de son tort, because the consolidation had ended the existence of the trust company, and the bank, being a different entity, could not rightfully represent the estate without a new appointment from the probate court, this decision, as to the State law, should be followed by the court. . . To conform with the State law, under the act of Congress, the bank, in order to represent and administer the estate, should apply for an appointment by the probate court."

It is argued in this case that one of the purposes of the Federal legislation was to prevent any discrimination against national banks and in behalf of State institutions. Cases are cited by learned counsel for the defendant in error in support of the proposition that such discrimination should not be tolerated. None of the authorities cited, however, are in point, because, under the Code of 1910, § 2821, as amended by the act of 1917 (Ga. L. 1917, p. 81), treating of the powers of State trust companies and conferring upon them the right to act as executors, administrators, and in other fiduciary capacities, national banks are put upon exactly the same footing with our own State institutions. It is declared that it shall be lawful for any national bank located in this State, when empowered so to do by the laws of the United States, to act in this State by any and every method of appointment and in any capacity whatever as trustee and as executor, administrator, or registrar of stocks and bonds. Also, that the oath prescribed to be taken by executors and administrators may be taken when a national bank acts in such capacity, either by the president, or a vice-president, or the cashier, or some trust officer designated for that purpose by the national bank. But it is also prescribed that "Nothing herein contained shall be considered to relieve a na-

tional bank from giving a bond, when such bond under the laws of this State is required to be given by an individual acting in any of the aforesaid capacities." Park's Code Supp. 1922, §§ 2821(1-n) ; Michie's Code, §§ 2821(7) et seq. So there is no discrimination, either in the law or policy of this State, against national banks acting in fiduciary capacities of any kind upon the same terms as are prescribed by law for similar State institutions. But it is our opinion that the judgment of the court of ordinary in this case was correct, and should be sustained, if for no other reason than that it does not appear from the application for, mandamus that the First National Bank & Trust Company in Macon, had given the bond which is an indispensable prerequisite to secure the performance of the duties of the substituted administrator. This would be true even could it be held (contrary of the holding of the Supreme Judicial Court of Massachusetts, affirmed by the Supreme Court of the United States in the Worcester case, supra) that the former obligation of the Continental Trust Co. as the administrator of Mrs. Crutchfield's estate, was not extinguished. All the numerous authorities cited by able and diligent counsel for the defendant in error are found, upon examination, to be easily distinguishable from the case at bar. We are therefore of the opinion that while the merger of the two corporations qualified by law to execute the office of administrator transfers to the consolidated corporation the custody and charge of the property of a decedent, the power of executing the duties of an administrator can not be made a mere matter of bargain and sale, but that the corporation which may be designated by the contract to act as an administrator in lieu of another corporation must obtain the approval of the court of ordinary, and derive therefrom the authority to act as administrator in the manner provided for the appointment of an individual in the first instance, just as if there had been no prior appointment. We therefore hold that it was error to grant a mandamus absolute in this case, and that the court should properly have sustained the demurrer to the petition for mandamus.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*