THE SECURITY CENTRAL NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73554. Promulgated October 31, 1935.

350

*H. Glenn Duis, Esq.*, and *Jesse Knapp, C. P. A.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

352

SEAWELL: Evidence was offered by the petitioner to prove that it sustained a loss of $42,379.79 under the Security Bank trust and a joint loss of $40,386.89 under both trusts. It also sought to prove that, in the alternative, it is entitled to a deduction of $41,388.32, the face amount of the notes substituted for cash and good assets, for bad debts. We have determined the gross income and deductions, including losses and bad debts, of the Central Bank trust to be the amounts claimed by the petitioner. No similar findings are necessary respecting the Security Bank trust under the view we take of the issue presented for decision.

Among the points relied upon by the petitioner to support its claims are that it is the grantor of both trusts; that the trusts are not separate taxable entities from it; that the withdrawn assets constitute reserves for bad debts; and that the cash and notes transferred to it by the trustees in exchange for worthless notes and notes of doubtful value were additional contributions to capital. The respondent's position is that the petitioner as it has existed since the merger never acquired title to the withdrawn assets conveyed to the two groups of trustees, and that the loss, if any, was sustained by the certificate holders, not the petitioner.

The question in the final analysis turns upon whether the petitioner created both trusts and whether the " merging " banks are the same taxable entity. Obviously, if the petitioner was not the grantor of the trust created to liquidate withdrawn assets of the Security Bank, the state bank, or is a taxpayer separate from that association, it is not entitled to deduct any of the state bank's losses or bad debts.

The objective of the merger was to increase the combined capital, surplus, and undivided profits of the petitioner under its present name to $1,100,000 by contributions of sound assets, two fifths by the shareholders of petitioner and three fifths by the shareholders of the state bank, secured for a period of two years to the extent of withheld assets conveyed in trust by the respective banks for that purpose. The burden of proving the date of transfer of assets to the trustees was on the petitioner. It did not attempt to prove

the point by testimony and such evidence as there is in the record indicates that the assignments were made prior to the effective date of the merger.

The "agreement of consolidation" executed December 4, 1929, specifically provided for the transfer by each "merging" bank to trustees, in trust, "before the effective date of the consolidation", of assets not contributed in the merger. The merger occurred February 1, 1930, but there is testimony that the assets and books of the banks were not consolidated until February 5, 1930. The trust agreements were executed in January 1929, and recited provisions in the "agreement of consolidation" for the transfer of withheld assets to trustees before the merger was effected. The inference to be drawn from the fact that the capital, surplus, and undivided profits of the bank resulting from the merger were to aggregate $1,100,000, no more or less, is that the assets unnecessary to make up such an amount were not to be taken into the merger. The transaction contemplated the transfer of the withheld assets to trustees prior to the date of merger and, in the absence of proof to the contrary, we must assume that the intention of the banks was carried out.

One of the requisites for the creation of an enforceable trust is an interest in property. The petitioner never acquired legal title to the withheld assets of the state bank and accordingly had none when the trust was created. Its interest in the property was limited to the right to substitute worthless assets contributed by the state bank for property held by its trustees. We hold that the petitioner was not the grantor of the trust established by a conveyance of withheld assets of the state bank.

The merger here was effected under the provisions of an amendment enacted February 25, 1927, to the National Banking Act. 44 Stat. 1225. Prior to the enactment of the amendment no authority existed for the union of state banks with national banks. *McRoberts* v. *Menier*, 270 Ill. App. 1. The amendment provides that upon such a "consolidation" "All the rights, franchises, and interests of each of such constituent banks * * * in and to every species of property * * * thereto belonging, shall be deemed to be transferred to and rest in such consolidated national banking association without any deed or other transfer" and that "No such consolidation shall be in contravention of the law of the State under which said bank is incorporated."

The amendment has been interpreted by the courts on several occasions. In *Ex Parte Worcester County National Bank*, 279 U. S. 347, a Massachusetts trust company had been executor of an estate prior to its merger with a national bank, and the surviving bank claimed

that it became executor by operation of the merger. At the time of the merger a statute of Massachusetts provided that upon the merger of a trust company with another bank its charter " shall be void except for the purpose of discharging existing obligations and liabilities." In denying the claim the Court agreed with the conclusion of the state court that the word " franchise " appearing in the amendment did not mean the charter of the trust company; that the trust company had gone out of existence and that the national bank " was not a newly-created organization, but an enlargement of the continuously existing national bank." The Court further construed the effect of the amendment in Massachusetts " to be only to transfer the property and estate from the trust company to the national bank, to be managed and preserved as the state law provides, for administration of estates."

In *Commonwealth* v. *First Nat. Bank & Trust Co. of Easton*, 303 Pa. 241; 154 Atl. 379, a trust company of Pennsylvania merged under the charter of a national bank. At the time the merger took place there was no law in Pennsylvania preventing the merger or recognizing that such a merger operated to dissolve the state bank. The national bank contended that the contract of " consolidation " and provisions of the amendment to the National Banking Act extinguished the trust company. The court held that the merger did not extinguish the charter of or dissolve the trust company, and directed that a decree of dissolution be entered in the proceeding. Other decisions are to the same effect. *Stevens* v. *First National Bank & Trust Co.*, 160 S. E. 243; 173 Ga. 332; *Hofheimer* v. *Seaboard Citizens National Bank of Norfolk*, 154 Va. 392; 153 S. E. 656; affd., 154 Va. 896; 156 S. E. 581; certiorari denied, 283 U. S. 855. Cf. *Adams* v. *Atlantic National Bank of Jacksonville*, 155 So. (Fla.) 648; *Bayer* v. *Barrett*, 71 Cal. App. 620; 15 Pac. (2d) 801.

An examination of the statutes of Ohio in effect when the merger here was accomplished discloses no law forbidding or authorizing the merging of Ohio banks with national banking associations. There are state laws defining the rights and powers of local banks united by merger. None of these recognize a continuation of the corporate identity of the merging bank in the surviving bank. See sec. 710–87, 88, Page's Annotated Code of Ohio. Furthermore, they contemplate the consolidation of all of the assets of the merging banks. Here by express agreement the state bank withheld a portion of its property from the merger.

We conclude that the merger did not work a dissolution of the state bank; that the existence of the state bank was not continued in the petitioner; and that the petitioner was not the grantor of the trust to which the state bank's withheld assets were transferred. From

these conclusions it follows that the petitioner, being a taxpayer separate and distinct from the state bank, is not entitled to loss or bad debt deductions of the state bank or of the trust created by it. It was fully reimbursed for such of the contributed assets of the state bank as became worthless during the taxable year.

It is unnecessary to decide the status of the petitioner after the merger; that is, whether it is a new corporation or whether its corporate identity continued without any break. See *Northwest Bancorporation*, 33 B. T. A. 160. The operations of the trust created by the Central National Bank resulted in net income of $1,992.90; consequently, there is no loss to deduct from gross income of the petitioner, irrespective of whether it is the same or a different taxpayer from the Central National Bank. It was fully reimbursed for its bad debts and there is nothing to deduct for debts ascertained to be worthless and charged off during the taxable year.

Reviewed by the Board.

*Decision will be entered for the respondent.*