LE BLANC, Justice.
On October 26, 1948 a judgment of interdiction was pronounced against Ophelia LeBoeuf in the 14th Judicial Court in the Parish of Calcasieu and on May 5, 1948, on the petition of 'her brothers and sisters, coheirs with her of their parents and joint co-owners of certain property situated in that parish, the Lake Charles Bank and Trust Company was appointed curator of the estate of the said interdict. Phines E. LeBoeuf was appointed curator of her person and Mrs. Alice Reed was appointed under-curatrix. In due time the trust officer of the Lake 'Charles Bank and Trust Company and the two other appointees qualified for their respective trusts by taking the required oath and the interdict’s interest in the property was duly administered.
On February 1, 1949, the Lake Charles Bank and Trust Company converted into a National bank under the name of Gulf National Bank at Lake Charles, and the question arose as to whether it had, by such conversion, vacated the curatorship to which it had been named and appointed and for which it had qualified. Accordingly the newly converted bank instituted this proceeding under the provisions of Act No. 22 of the Extra Session of 1948 seeking a declaratory judgment with regard to its present status concerning the said curator-ship.
*925 After setting out the facts in its petition in far greater detail than they have been here stated, it asked for citation and service on the .under-curatrix of the interdict and the curator of her person and prayed that in due course there be judgment declaring that no vacancy existed in the curatorship by virtue of the conversion that had taken place and that amended letters of curator-ship issue substituting the new title and name of “Gulf National Bank at Lake Charles” for the old name and title of “Lake Charles Bank & Trust Company” upon taking the required oath.
The parties made defendant filed a joint answer in which the matter presented for adjudication in plaintiff’s petition was put at issue. According to the extract from the minutes of the Court on the day that the case was called for trial a stipulation of facts was filed by counsel for both parties and by agreement the matter was submitted to the Court on such stipulation. In his written reasons for judgment, the district judge states that the case was tried and submitted on the agreed stipulation. We find no stipulation in the record but after reviewing the pleadings in the case and examining the written reasons of the district judge we get the impression that the facts, if any were stipulated, were very much the same as have been outlined in stating the case. They are not controverted, and inasmuch as the case presents altogether a question of law, we will proceed to consider it rather than remand it for completion of the transcript.
Upon submission to him the trial judge ruled in favor of the plaintiff, Gulf National Bank at Lake Charles and rendered judgment maintaining it as curator of the estate of the interdict without any more formality than the filing of the certificate of the Comptroller of the Currency of the United States authorizing Lake Charles Bank & Trust Company to commence business as a national banking association under the title “Gulf National Bank at Lake Charles” and also the certificate issued by the Board of Governors of the Federal Reserve System authorizing it to act as fiduciary in all matters which are permitted to state banks and trust companies. From that judgment the defendants were granted this appeal.
The sole question presented for the Court’s consideration is: “Is the Gulf National Bank at Lake Charles the same legal corporate entity as Lake Charles Bank & Trust Company or has there been a change in the corporate entity of Lake Charles Bank & Trust Company by reason of its conversion to a national bank under a new name ?”
The pertinent provisions of the Revised Statutes of the United States with regard to the conversion of a State Bank into a National Banking Association are found in Section 5154, 12 U.S.C.A. § 35. They are as follows: “Any bank incorporated by special law of any State or of the United States *927 or organized under the general laws of any State or of the United States and having an unimpaired capital sufficient to entitle it to become a national banking association under the provisions of the existing laws may, by the vote of the shareholders owning not less than 51 per centum of the capital stock of such bank or banking association, with the approval of the Comptroller of the Currency, be converted into a national banking association, with any name approved by the 'Comptroller of the Currency; Provided, however, That said conversion shall not be in contravention of the State law. In such case the articles of association and organization certificate may be executed by a majority of the directors of the bank or banking institution, and the certificate shall declare that the owners of 51 per centum of the capital stock have authorized the directors to make such certificate and to change or convert the bank or banking institution into a national association. A majority of the directors, after executing the articles of association and the organization certificate, shall have power to execute all other papers and to do whatever may be required to make its organization perfect and complete as a national association. The shares of any ■such bank may continue to be for the same amount each as they were before the conversion, and the directors may continue to be directors of the association until others are elected or appointed in accordance with the provisions of the statutes of the United States. When the comptroller has given to such bank or banking association a certificate that the provisions of this Act have been complied with, such bank or banking association, and all its stockholders, officers, and employees shall have the same powers and privileges, and shall be subject to the same duties, liabilities, and regulations, in all respects, as shall have been prescribed by the Federal Reserve Act and the National Banking Act for associations originally organized as national banking associations.”
From those provisions it is to be observed that a State bank may, in the absence of a prohibitory State law, convert into and become a National Banking Association. There is no statute in Louisiana on the subject and the conversion in this case, was, therefore, not in contravention of any State law. Indeed, it may be stated that the validity of the conversion is not questioned and we are concerned only with what were the effects resulting from the conversion with regard to the status of the State bank’s trust by virtue of its appointment as curator of the estate of this interdict.
The question that is raised is res nova in this State. It has been raised in other States and there seems to be some conflict in the results that were reached. Such conflict as there is, however, is found in cases relating to consolidation of banks rather than to mere conversion of State banks into National-banks.
A full discussion of the problem is presented in 131 A.L.R. 748, where the case of Citizens & Southern National Bank of South Carolina v. Conner, 195 S.C. 203, 11 *929 S.E.2d 271 is briefed, and a lengthy annotation follows. In the cited case the general proposition is laid down that when a State bank converts into a National bank the identity and corporate existence of the State bank is not destroyed but continues. The National bank acquires both the assets and liabilities of the State bank. The holding is in line with a statement contained in American Jurisprudence, Vol. 7, p. 601, Section 835 dealing with the reorganization of State banks as National banks, from -which we quote: “The reorganization of a State bank as a National bank does not destroy its identity or corporate existence. The transition does not disturb the relation of either stockholders or officers of the bank, nor does it enlarge or diminish the assets of the institution. These all remain the same under the national as they were under the state organization. The change is a transition, and not a new creation. By such conversion every holder of capital stock of the state bank becomes a shareholder of the capital stock in the national bank to the amount of his shares, and, as such, is subject to liabilities imposed by the act of such shareholders.”
In the same volume on page 148, section 192 it is stated that, “Where a bank acting in a fiduciary capacity consolidates or merges with another bank or where a reorganization is effected, the right of the new banking corporation to assume such fiduciary status has been sustained. The right of a National Bank consolidating with a state bank or trust company to succeed to the fiduciary capacity of the state banking corporation is expressly provided for in the National Bank Act.” 12 U.S.C.A. § 34 is cited as authority. In some states the right to succession is fortified by a State statute on the subject. Such was the situation in the case of Citizens & Southern National Bank of South Carolina v. Conner, supra. There is no comparable statute in Louisiana .and in the absence of a prohibitory law the provisions of the National Bank Act should apply.
Thus it would seem that even in cases of consolidation or merger with another bank, no change in the fiduciary status fixed during the existence of the State bank takes place although, as appears further in the same section, there is authority to the contrary. That authority seems to be the one that is principally relied on by counsel for the defendants in this case, who cite to that effect, two cases from Massachusetts and a case from Georgia. The Massachusetts cases are Petition of Commonwealth-Atlantic Nat. Bank of Boston (In re Babbidge’s Estate), 249 Mass. 440, 144 N.E. 443 and Petition of Commonwealth-Atlantic Nat. Bank of Boston (Maynard’s Estate et al.), 261 Mass. 217, 158 N.E. 780 and the Georgia case is Stevens v. First National Bank & Trust Company, 173 Ga. 332, 160 S.E. 243. Both of the Massachusetts cases are referred to and distinguished in the reported case of Citizens & Southern National Bank of South Carolina v. *931 Conner, 195 S.C. 203, 11 S.E.2d 271, 131 A.L.R. 748. As therein stated, in both, the Court was dealing with a consolidated corporation which was a different corporation from the corporation which had been appointed as trustee in the first instance. The Virginia case of Hofheimer v. Seaboard Citizens’ National Bank of Norfolk, 154 Va. 392, 153 S.E. 656 is also distinguished, the Court stating that it was not applicable “and should not be followed for the reasons that it involves a consolidation and not a conversion.” [195 S.C. 203, 11 S.E.2d 274, 131 A.L.R. 748.] The same may also be said about the Georgia case relied on by counsel for defendants.
There is no doubt a marked distinction between a mere conversion of a State hank into a National bank and a consolidation of two or more banks and whilst it may be that a State bank which acted in some fiduciary capacity as a State bank may not continue in the same capacity after it has consolidated with another bank because by the -fact of consolidation a new corporate body has come into being, any such restriction on the right to occupy the same fiduciary position it had as a State bank does not apply in cases of conversion into a National bank where no change in its legal, corporate identity has taken place. This case being merely one of conversion of a bank in which we hold that there was no change in the status of the curatorship at issue, we are not concerned with what the result would be in the case of a consolidation or merger of two or more banks.
The judgment appealed from is affirmed.