296 So.2d 411 (1974)
Joseph N. TRAIGLE, Collector of Revenue, State of Louisiana, Plaintiff-Appellee-Appellant,
v.
The PARISH OF CALCASIEU, Defendant-Appellee, and
Consolidated Aluminum Corporation (Formerly Gulf Coast Aluminum Corporation), Defendant-Appellant-Appellee.
No. 4545.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
Rehearing Denied June 26, 1974.
*412 Stockwell, St. Dizier, Sievert & Viccellio by Fred H. Sievert, Jr., Lake Charles, for defendant-appellant-appellee.
Mengis, Roberts, Durant & Carpenter by Warren L. Mengis, Baton Rouge, for plaintiff-appellee-appellant.
Kantrow, Spaht, Weaver & Walter by Paul H. Spaht, Baton Rouge, for defendant-appellee.
Before CULPEPPER, MILLER and WATSON, JJ.
WATSON, Judge.
This is a summary proceeding filed under the provisions of LSA-R.S. 47:1574. The Collector of Revenue for the State of Louisiana, hereinafter referred to as "the Collector", ruled defendants, the Parish of Calcasieu, hereinafter referred to as "the Parish", and Consolidated Aluminum Corporation, formerly Gulf Coast Aluminum Corporation, hereinafter referred to as "Conalco", into court to show cause why they should not be condemned to pay sales and use taxes under the provisions of *413 LSA-R.S. 47:301 through 47:318, together with penalties, interest, attorney's fees and costs.
The facts were largely stipulated: any tax due would be the sum of $216,314.53 under Category 1, purchases from out of state and foreign corporations, and $37,685.19 under Category 3, purchases from registered Louisiana dealers, with a credit against these amounts of $14,843.81. Act 663 of 1970 amending LSA-R.S. 47:1601 to change the interest rate on unpaid taxes from 6% to 12% per annum went into effect on July 29, 1970. The legal effect of this amendment as to taxes which had become due prior to the effective date of the amendment was disputed. A deficiency notice was sent by the Collector to the defendants on April 8, 1971, relating to the tax period December 1, 1968, through October 31, 1970. The construction of an aluminum plant in the Parish by Conalco was financed pursuant to the provisions of the Industrial Inducement Act, codified as LSA-R.S. 39:991 et seq., as ratified by Article 14, Section 14B(3), of the Louisiana Constitution of 1921. The Honorable Frank T. Salter, Jr., District Attorney and legal advisor for the Parish, wrote a letter to Conalco in early June of 1969 advising the Corporation that sales and use taxes were not due the State of Louisiana in connection with the construction and instructing Conalco not to pay such taxes. A copy of this letter was sent to the Department of Revenue by Conalco by letter dated June 4, 1969. The correctness of this letter was disputed by the Department of Revenue in a letter sent to defendants June 13, 1969. The penalties, if any, due on returns filed by out of state vendors, without payment of the tax, would be $7,084.63. The Collector contends that penalties are due even though the returns were filed, while Conalco contends that no penalty is due on this item. A payment of $71,825.00 was made to the Collector by Conalco on August 25, 1970, which was credited to Category 1 use taxes. This represented a proposed assessment of $65,000.00 plus interest to August 30, 1970, of $6,825.00.
The trial court found in favor of plaintiff-in-rule and gave judgment in favor of plaintiff, the Collector, and against defendant-in-rule, Conalco, in the sum of $253,999.72, subject to credits of $12,072.81, $961.80 and $1,809.20. Judgment was also given for the statutory penalties, provided by LSA-R.S. 47:1602, of 25 per cent, subject to credits of $8,574.87 and $8,863.56 in connection with returns timely filed, the net penalties due being $58,600.55. Judgment was also given for interest at the rate of one-half per cent per month from the due date until July 29, 1970, and thereafter at the rate of one per cent per month, until paid, which amount was computed to January 14, 1974, to the sum of $89,241.05, attorney's fees in the amount of ten per cent of the total taxes, penalties and interest, and all costs. There was judgment in favor of defendant-in-rule, the Parish, and against the plaintiff-in-rule, the Collector, rejecting the Collector's suit against the Parish. There was also judgment on the third party demand by Conalco against the Parish rejecting the third party demand.
Conalco has appealed suspensively from the judgment of the trial court. The Collector has appealed devolutively as to that portion of the judgment dismissing plaintiff's demands against the Parish. We affirm in part and amend in part.
Conalco has made three assignments of error in brief as follows:
"The court erred in finding that the lease agreement between Conalco and the Police Jury of the Parish of Calcasieu contained a stipulation pour autrui running in favor of the plaintiff tax collector; particularly, is this so, where the trial court failed to make a specific finding that in fact the Parish of Calcasieu was legally liable or responsible for the sales taxes involved herein.
"The court erred in holding that Conalco was liable not only for the taxes, but *414 also for interest, penalties and attorney's fees, when, in fact, the alleged stipulation pour autrui did not include anything but taxes, where under the law, the Parish of Calcasieu itself could not be liable for interest, penalties and/or attorney's fees, and thirdly, where the agent of the Parish of Calcasieu directed that Conalco, acting as the agent of the Parish of Calcasieu, neither collect the taxes nor provide for their payment in the purchase of the equipment and other materials used to construct the plant.
"The court erred in assessing interest at the rate of 12% after July 29, 1970, when the law was amended to increase from 6% to 12% interest on unpaid taxes, the liability for which had accrued prior to the effective date of the act."
The Collector contends that the trial court erred:
(1) In dismissing the Collector's demand against the Parish.
(2) In allowing Conalco credits on the statutory penalties of $8,574.87 and $8,863.56.
The Parish entered into a lease agreement with Conalco on September 1, 1967, whereby the Parish, the lessor, issued bonds to finance the construction of an aluminum plant for Conalco, the lessee, under the provisions of the Louisiana Industrial Inducement Act, supra. Although the Parish was the nominal owner of the facility, the construction was done under the supervision of Conalco's employee, William F. Boyer, Jr., the project supervisor. The Parish issued $62,700,000.00 in bonds to finance the project. Other than accrued interest paid by the purchasers of the bonds which was to be deposited in a bond fund, all other proceeds of the bonds were deposited in the capital project acquisition fund.
Certain sections of the lease between Conalco and the Parish are pertinent to a resolution of the issues.
In Article VI, entitled "Maintenance, Taxes and Insurance," Section 6.1 provides:
"Lessee shall not be required to pay, discharge or remove any mechanics', laborers', or materialmen's lien or privilege or any other lien, privilege or encumbrance or any other imposition or charge against the Project or any part thereof, so long as Lessee shall, after prior written notice to the Parish and the Trustee, at Lessee's expense, contest the same or the validity thereof in good faith by appropriate proceedings which shall operate to prevent the collection of the lien, privilege, encumbrance or other imposition or charge so contested and the sale of said Project or any part thereof to satisfy the same. Such contest may be made by Lessee in the name of the Parish or of the Lessee or both as Lessee shall determine and the Parish agrees that it will, at Lessee's expense, cooperate with Lessee in any such contest to such extent as Lessee may reasonably request. It is understood, however, that the Parish shall not be subject to any liability for the payment of any costs or expenses in connection with any such proceeding brought by Lessee, and Lessee covenants to pay and to indemnify and save harmless the Parish from all such costs and expense. Pending any such proceeding the Parish and Trustee shall not have the right to pay, remove or cause to be discharged the tax, lien, assessment, encumbrance, imposition or charge thereby being contested if the Lessee shall have given such security as may be required in the proceeding and such reasonable security as may be demanded by the Parish or the Trustee or both to insure payment and prevent any sale or forfeiture of the Project or any part thereof by reason of such nonpayment, and provided further that the Parish would not be in substantial danger of civil liability and the officials thereof would not be in any danger of criminal liability by reason of such nonpayment." (TR. 91).
*415 Section 6.3 of Article VI provides as follows in regard to "Taxes, Other Governmental Charges and Utility Charges":
"However, the Lessee will pay, as the same respectively become due, all taxes and governmental charges of any kind whatsoever that may at any time be lawfully assessed or levied against or with respect to the Project or any machinery, equipment or other property installed or brought by the Lessee therein or thereon, all utility and other charges incurred in the operation, maintenance, use, occupancy and upkeep of the Project and all assessments and charges lawfully made by any governmental body for public improvements that may be secured by lien on the Project.
"The Lessee may, at its expense and in its own name and behalf or in the name and behalf of the Parish, in good faith contest any such taxes, assessments and other charges and, in the event of any such contest, may permit the taxes, assessments or other charges so contested to remain unpaid during the period of such contest and any appeal therefrom, provided during such period enforcement of such contested item is effectively stayed. The Parish will cooperate fully with the Lessee in any such contest." (TR. 93-94).
The lease provides that after payment of the bonds by Conalco, the lessee, the lessee shall have the option to purchase all of the Parish's interest in the project by the payment of $1,000.00.
Although the lease provides that the Parish is the nominal owner of the project and the purchaser of the items in connection with which the Collector seeks to collect sales and use taxes, LSA-R.S. 47:301(8) specifically includes a parish as a person who may be liable for the tax as a dealer or purchaser. In our opinion, the specific inclusion of a parish in this provision of the sales tax statute clearly places liability on the Parish for the taxes claimed by the Collector in this case and also constitutes a legislative waiver of any immunity from suit for such taxes that a parish might otherwise claim. Further, the claim of the Parish based on the doctrine of sovereign immunity from suit is without merit since this doctrine has been abrogated by the Supreme Court's decision in Board of C. of P. of New Orleans, v. Splendour S. & E. Co., La., 273 So.2d 19 (1973).
We find Conalco's first assignment of error to be without merit. The Parish is clearly liable for the taxes in question, as owner of the project, and this liability is specifically assumed by Conalco under the terms of the lease agreement. Conalco contracted to pay these taxes in Section 6.3 of the lease agreement.
However, this liability is not the result of a stipulation pour autrui, as found by the trial court. The Civil Law concept of stipulation pour autrui, or stipulation in favor of a third person, implies an intent to confer an advantage or benefit on the third person. LSA-C.C. art. 1890. Since there was no intent, either stated in the agreement or implied by its terms, to confer a benefit on a third party; here the Collector, the concept of stipulation pour autrui is not applicable. If there were any implications in the lease concerning taxes, our reading indicates that the parties hoped not to be required to pay them. The liability, by the explicit terms of the lease, results from the contractual agreement between Conalco and the Parish that Conalco would pay any taxes which had to be paid.
As to the second assignment of error by Conalco, Conalco contends that the letter it received from the District Attorney, legal advisor to the Parish, justified its non-payment of taxes. However, in Claiborne Sales Company v. Collector of Revenue, 233 La. 1061, 99 So.2d 345 (1957), the Claiborne Sales Company contended that the Collector of Revenue was estopped from collecting sales tax, because an agent of the Collector of Revenue told Claiborne that the company was not subject *416 to the sales tax law. The Supreme Court in that case held that the state cannot be estopped from collecting taxes and penalties because of contrary advice given by an agent of the Collector. This ruling would apply in the instant case. Certainly, the state cannot be estopped by legal advice given to a parish and action taken in reliance thereon. In this case, as the trial court pointed out:
"Mr. Boyer acknowledged that no one employed by the Department of Revenue ever told him these taxes were not due.. . . On the contrary, the preponderance of evidence is to the effect that the Collector's office informed both the Parish and GCA they disagreed with the opinion of the Honorable Frank T. Salter, Jr., District Attorney for Calcasieu Parish, that no sales or use taxes were owed the State, shortly after receiving a copy of the opinion, and immediate steps were taken to determine and assess the correct amount of the taxes due on such purchases." (TR. 153).
As to the contention in Conalco's assignment of error number two that interest, penalties and attorney's fees are not due because the agreement between Conalco and the Parish did not include anything but taxes, the clear wording of the provision in question is as follows:
". . ., the Lessee will pay, . . ., all taxes and governmental charges of any kind whatsoever that may at any time be lawfully assessed or levied against or with respect to the Project or any machinery, equipment or other property installed or brought by the Lessee therein or thereon," (Emphasis ours). (TR. 93).
Article IV, Section 4.3, of the lease agreement provides for various disbursements from the project acquisition fund. Section 4.37 states that the money can be used for:
"Payment of the taxes, assessments and other charges, if any, referred to in Section 6.3 hereof that may become payable during the Construction Period." (TR. 82).
Article V, Section 5.5, provides that the obligation of the lessee is unconditional and the lease shall not be terminated for any cause including:
". . ., any change in the tax or other laws of the United States of America or of Louisiana or any political subdivision of either thereof . . .". (TR. 89).
Under Article VI, Section 6.3, the lessee also agrees to pay any taxes, assessments or other charges paid by the Parish on behalf of the lessee with interest at the rate of six per cent annum.
There is some justification for regarding the lease between the Parish and Conalco as a sale rather than a lease. As the court pointed out in Hebert v. Police Jury of West Baton Rouge Parish, 200 So.2d 877 (La.App. 1 Cir. 1967); writ refused La., 201 So.2d 520, in connection with a similar lease, this lease
". . . is not just an ordinary lease with an option to buy, but rather is more in the nature of a lease-purchase arrangement where the serious consideration is the fulfilling and acquittal of all of said lease obligations." 200 So.2d 892.
The contention in the second assignment of error that Conalco is not liable for interest, penalties and attorney's fees because it acted under the direction of the agent of the Parish and, therefore, Conalco was in good faith in not paying the taxes in question, is unsound. First, it is questionable whether good faith is a defense against penalty provisions; next and more conclusive, the record does not indicate good faith on the part of Conalco.
The Supreme Court stated in the Claiborne Sales Company case, supra, that good faith is immaterial in the assessment of penalties and interest under LSA-R.S. 47:1601, 47:1602 and 47:306. Conalco contends *417 that Collector of Revenue v. J. L. Richardson Company, 247 So.2d 151 (La. App. 4 Cir. 1971); writ refused 258 La. 915, 248 So.2d 586 (1971), is applicable, and that Conalco's good faith prevents the imposition of penalties. In Collector of Revenue v. J. L. Richardson Company, supra, the court found that the taxpayer believed it had a legal right not to make tax returns and therefore its good faith did not justify assessment of penalties. However, in 33 La.L.R. 291, it is pointed out that St. John the Baptist P. S. B. v. Marbury-Pattillo C. Co., 259 La. 1133, 254 So.2d 607 (1971) casts doubt on the Richardson case, supra, in its finding that good faith is a defense.
In any event, here, Mr. Boyer, the project supervisor, testified that Conalco had requested that an application for a tax exemption certificate as to sales or use taxes be made on behalf of his company, but
"A tax exemption certificate had not been received by the project." (TR. 178).
Conalco was obviously aware that such a certificate was necessary to avoid these taxes, on the basis of its own employee's testimony. Conalco has not shown the good faith demonstrated in Collector of Revenue v. J. L. Richardson Company, supra.
The interest, penalties and attorney's fees were an obligation assumed by Conalco under the provisions of the lease agreement set forth hereinabove.
The only assignment of error by Conalco which we find to have merit is number three relating to the increase in the interest rate after July 29, 1970. As in the case of judicial interest, we believe that the interest attaches at the time of the due date, and the legislative act is not retroactive as to taxes assessed prior to its passage. Therefore, the judgment of the trial court is modified to make the interest rate six per cent, until paid.
Since Conalco assumed all tax obligations of the Parish in connection with construction of the aluminum plant, we do not believe it is necessary, as the Collector contends, to give judgment herein against the Parish.
Credits on the penalties were allowed by the trial court: the amount of $8,574.87, where returns were timely filed pertaining to Category 1 use taxes; and $8,863.56, where returns were timely filed pertaining to Category 3 sales taxes. The Collector contends that these credits should not have been allowed. No authority is cited for this contention, and we believe as a matter of law that the credits are due. As to the amounts, the parties originally stipulated that the credit, if any, as to Category 1 taxes would be $7,084.63. In its written reasons for judgment the trial court stated that the credits given are those
". . . credits set forth in the supplemental stipulation filed on September 13, 1973," (TR. 154).
This supplemental stipulation, with its attached exhibit 6, refers only to the credit of $8,574.87 pertaining to Category 1 taxes. However, the Collector does not dispute the amounts, only the fact that the credits were given, and we will accept the credits in the judgment as found by the trial court. LSA-C.C.P. art. 2132, Interdiction of LeBoeuf, 217 La. 916, 47 So.2d 687 (1950). As the Supreme Court pointed out in Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963),
". . . . a strong presumption arises that the trial court had received competent and adequate evidence such as would serve as a basis for the judgment rendered." 150 So.2d 20.
For the foregoing reasons, the judgment appealed from is amended to provide interest on the amount of taxes due at the rate of one-half (½%) per cent per month *418 from the due date, until paid, and, as amended, is affirmed.
All costs of this appeal are assessed against Conalco, defendant-appellant-appellee.
Amended in part; affirmed in part.